UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MEIJER, INC. and MEIJER DISTRIBUTION, INC., on Behalf of Themselves and All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>SMITHKLINE BEECHAM CORPORATION d/b/a GLAXOSMITHKLINE, TEVA PHARMACEUTICAL INDUSTRIES LTD., and TEVA PHARMACEUTICALS,<br><br>Defendants. | Civil Action No. 12-1218(WHW)(MCA) |

**PLAINTIFFS' MEIJER, INC. AND MEIJER DISTRIBUTION, INC.
MEMORANDUM OF LAW IN SUPPORT OF MOTION TO CONSOLIDATE CASES
UNDER FED. R. CIV. P. 42(a) AND APPOINT INTERIM
<u>CO-LEAD AND LIAISON COUNSEL UNDER FED. R. CIV. P. 23(g)</u>**

James E. Cecchi
Lindsey H. Taylor
CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO, P.C.
5 Becker Farm Road
Roseland, New Jersey 07068-1739
(973) 994-1700

Linda P. Nussbaum
John D. Radice
Shelly L. Friedland
GRANT & EISENHOFER. P.A.
485 Lexington Avenue, 29th Floor
New York, NY 10017
(646) 722-8500

*Attorneys for Plaintiffs*

Plaintiffs Meijer, Inc. and Meijer Distribution, Inc. (collectively, "Plaintiffs" or "Meijer") respectfully submit this Memorandum of Law in support of their motion for the entry of Pretrial Order No. 1 consolidating all related direct purchaser cases concerning the prescription pharmaceutical Lamictal ("the Actions")[1] and appointing interim co-lead and liaison counsel for the proposed direct purchaser class, pursuant to Rules 42(a) and 23(g) of the Federal Rules of Civil Procedure, Local Rule 42.1 and the MANUAL FOR COMPLEX LITIGATION (FOURTH) (2011) §10.22 (the "MANUAL") and for the reasons set forth herein.  Counsel for Plaintiffs also have conferred regarding leadership with counsel in the related cases but have not been able to reach agreement.

Plaintiffs respectfully request that this Court appoint the firms of Grant & Eisenhofer, P.A. ("G&E") and Carella, Byrne, Cecchi, Olstein, Brody & Agnello, P.C. ("Carella Byrne") to serve as Interim Lead Counsel for the Direct Purchaser Plaintiffs.  Plaintiffs, therefore, request that the Court enter proposed Pretrial Order No. 1 appointing these firms as Co-Lead Counsel pursuant to Rule 23(g) of the Federal Rules of Civil Procedure and consolidating all related cases filed in this District.

## I.     Introduction and Procedural History

Lamictal (generic name "lamotrigine"), a prescription drug marketed by GSK and approved for the long-term treatment of Bipolar 1 Disorder and for the treatment of Epilepsy. Lamictal was one of GSK's best-selling drugs, with annual sales in the United States exceeding $2 billion prior to entry of generic versions of Lamictal tablets in July 2008.  Defendant Teva filed an ANDA seeking to become the first generic manufacturer to come to market with a

---

[1] The related cases include *Louisiana Wholesale Drug Company v. Smithkline Beecham Corporation*, No. 12-995 (WHW)(MCA) and *King Drug Company of Florence, Inc. v. Smithkline Beecham Corporation*, No. 12-1607 (WHW)(MCA).

generic version of Lamictal tablets.  Soon thereafter, GSK sued Teva for patent infringement.  At the conclusion of that patent trial in early 2005, this District found invalid one claim of the patent.  GSK and Teva immediately entered into negotiations to settle the patent litigation before the court made any further rulings regarding the remaining patent claims and quickly resolved that litigation on secret, anticompetitive terms designed to delay generic competition to Lamictal tablets.  These secret terms did not become public until ancillary litigation between Defendants commenced in mid-2008.  The key factual allegations in this and in the related cases are derived from the record in the patent litigation, the record in the ancillary 2008 litigation, Defendants' public statements, government analyses, and counsel's investigation.

On February 28, 2012, Plaintiffs filed this antitrust complaint seeking to recover overcharges arising out of Defendants' unlawful agreement to delay the entry of generic versions of Lamictal.  Two other Plaintiffs – Louisiana Wholesale Drug Company and King Drug Company of Florence, Inc., both represented by the same counsel – have filed similar, more narrow, complaints.  All the complaints seek treble damages on behalf of a proposed nationwide class of direct purchasers of Lamictal who allegedly were overcharged.  Defendants have not answered or moved against any of the complaints and none of the cases are procedurally advanced.

## II.     Pretrial Order No. 1

### A.     Consolidation of the Actions is Proper

The Actions are closely related to one another.  All are direct purchaser antitrust actions that allege violations of the Sherman Act.  The actions arise from the same questions of law and fact and allege substantially the same wrongful conduct against the same Defendants, and seek certification of the same nationwide class of direct purchasers.  All actions were brought following an

investigation by counsel into, *inter alia*, the record in the patent litigation and the record in the ancillary 2008 litigation between the Defendants.

Because there are numerous common questions of law and fact in the Actions, Plaintiffs respectfully submit that the Actions, as well as any subsequently filed related actions seeking damages for a proposed class of direct purchasers of Lamictal, should be consolidated for all purposes under Fed. R. Civ. P. 42(a), which provides:

> If actions before the court involve a common question of law or fact, the court may:
> (1) join for hearing or trial any or all matters at issue in the actions;
> (2) consolidate the actions; or
> (3) issue any other orders to avoid unnecessary cost or delay.

Fed. R. Civ. P. 42(a).

"[A] District Court has broad discretion to determine whether to consolidate cases." *In re: Mock*, 398 Fed. Appx. 716, 718 (3d Cir. 2010); *Ellerman Lines, Ltd. v. Atl. & Gulf Stevedores, Inc.*, 339 F.2d 673, 675 (3d Cir. 1964) (holding that "Rule 42(a) of the Federal Rules of Civil Procedure confers upon a district court broad power, whether at the request of a party or upon its own initiative, to consolidate causes for trial as may facilitate the administration of justice"). "The purpose of consolidation is to streamline and economize pretrial proceedings so as to avoid duplication of effort, and to prevent conflicting outcomes in cases involving similar legal and factual issues." *In re TMI Litigation*, 193 F.3d 613, 724 (3d Cir. 1999).

In exercising its discretion whether to consolidate cases, the Court should weigh the benefits of judicial economy against the potential for new delays, expense, confusion and prejudice. *Brady v. New Jersey Building Laborers State-Wide Funds*, 250 F.R.D. 171, 176 (D.N.J. 2008). In the absence of an articulated basis to assert confusion or prejudice,

3

consolidation is generally appropriate. *Salem Steel North America LLC v. Shanghai Shangshang Stainless Steel Pipe Co., Ltd.*, 2009 WL 2169243 at *2 (D.N.J. 2009); *A.F.I.K. Hlding SPRL v. Fass*, 216 F.R.D. 567, 570 (D.N.J. 2003). Furthermore, pursuant to L.Civ.R. 1, when related civil actions are filed, "[w]henever possible, such [subsequently filed] action shall be assigned to the same Judge to whom the pending related action is assigned." The actions do not need to be identical in order to be consolidated. *A.F.I.K. Holding SPRL v. Bio-Technology General Corp.*, 216 F.R.D. 567, 570 (D.N.J. 2003).

Because of the common questions of law and fact presented in the Actions, the interests of all parties and the judicial system are best served by the requested consolidation, which would promote efficiency, consistency, and judicial economy. Accordingly, the Actions should be consolidated under Rule 42(a).

B.  **The Appointment of Interim Co-Lead Counsel Is Appropriate Under Fed. R. Civ. P. 23(g) and G&E and Carella Byrne are the <u>Most Appropriate Counsel Under Those Criteria</u>**

Pursuant to Federal Rule of Civil Procedure 23(g) this Court may "designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action." Fed. R. Civ. P. 23(g). Courts choosing interim class counsel apply the same factors that apply in choosing class counsel at the time of certification of the class, *i.e.*, the standards set forth in Fed.R.Civ.P. 23(g)(1). *Waudby v. Verizon Wireless Services, Inc.*, 248 F.R.D. 173, 175-76 (D.N.J. 2008).

Rule 23(g)(1) provides, in relevant part, that in appointing class counsel the Court:

(A)  must consider:

(i)  the work counsel has done in identifying or investigating potential claims in the action;

4

    (ii)    counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;

    (iii)    counsel's knowledge of the applicable law; and

    (iv)    the resources that counsel will commit to representing the class;

(B)    may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class.

A class is fairly and adequately represented where counsel is qualified, experienced, and generally able to conduct the litigation on its behalf. *Hoxworth v. Blinder, Robinson & Co., Inc.*, 980 F.2d 912, 923 (3d Cir. 1992); *In re Prudential Insurance of America Sales Practices Litigation*, 962 F.Supp. 450, 519 (D.N.J. 1997). While no one factor under Fed. R. Civ. P. 23(g)(1) "should necessarily be determinative," Advisory Committee Notes (2003), the investigatory and analytical efforts of counsel can be a deciding factor:

> [i]n a case with a plaintiff class, the process of drafting the complaint requires some investigatory and analytical effort, tasks that strangers to the action most likely will not have undertaken. All other things being equal, when an attorney has performed these or other investigative and analytical tasks before making the application for appointment, he or she is in a better position to represent the class fairly and adequately than attorneys who did not undertake those tasks.

Moore's Federal Practice § 23.120[3][a] (3d. ed. 2007).

The proposed Pretrial Order No. 1 provides for the consolidation of any related later-filed or transferred direct purchaser class actions and the establishment of an organizational structure of Plaintiffs' counsel. By establishing a method to deal with the related actions and designating a leadership structure of Plaintiffs' counsel, entry of this Order will facilitate the orderly advancement of the litigation and result in a substantial time savings for the parties and the Court. Pretrial Order No. 1 thus comports with the MANUAL'S recommendations for the management of complex litigation. *See* MANUAL FOR COMPLEX LITIGATION (FOURTH) (2011) §§ 10.123, 10.22, 10.221.

Pretrial Order No. 1 also complies with the criteria for appointment of interim class counsel set out in Rule 23(g). G&E and Carella Byrne satisfy the applicable criteria for serving as interim class counsel. Specifically, G&E and Carella Byrne have worked to identify and investigate the potential claims, are experienced in handling complex class actions and antitrust litigation and especially pharmaceutical antitrust actions, possess in-depth knowledge of the applicable law, and have adequate resources to commit to representing the proposed direct purchaser class. *See* Fed. R. Civ. P. 23(g)(1).

### 1. Rule 23(g)(1)(A)(i): G&E Engaged In Substantial Identification And Investigation Of The Claims

G&E's counsel who are in charge of this matter, Linda P. Nussbaum and John D. Radice, have vast experience in pharmaceutical antitrust cases and has served as lead or co-lead counsel on behalf of its client Meijer in numerous such cases. *See, e.g.*, *Meijer, Inc., et al. v. Astrazeneca Pharmaceuticals Lp, et al.*, No. 06-cv-52 (GMS) (D. Del); *Meijer, Inc., et al. v. Abbott Laboratories*, No. 3:07-cv-5985 (CW) (N.D. Cal.), *In re DDAVP Direct Purchaser Antitrust Litigation*, No. 1:05-cv-2237 (S.D.N.Y.). G&E continually investigates potential abuses of the Hatch-Waxman Act – the law that provides the regulatory structure governing approval and entry of generic pharmaceuticals – and monitors related patent infringement litigation and potential anticompetitive settlements of such litigation. In this case, key information came from analysis of public filings in the underlying patent infringement litigation, *see SmithKline Beecham Corp. v. Teva Pharmaceuticals USA, Inc.*, Nos. 02-cv-3779 & 4537 (D.N.J.), and in an ancillary lawsuit between the Defendants concerning the interpretation of their (anticompetitive) agreement to settle the patent litigation, *see Teva Pharmaceutical Industries Ltd, et. al v. SmithKline Beecham Corp.*, No. 08-cv-3706 (D.N.J.). In addition, counsel at G&E constantly review the academic literature and government reports, including those referenced in the

Complaint, concerning authorized generics in particular and anticompetitive settlement of Hatch Waxman litigation in general, and used that information to bolster the Complaint. Counsel also employs investigators who assist with factual development.

> 2. **Rule 23(g)(1)(A)(ii) and (iii).  G&E and Carella Byrne Have Substantial Expertise Handling Class Actions, Other Complex Litigation, And The Types Of Claims Asserted In This Case**

> a. **Grant & Eisenhofer**

G&E is one of the largest and most respected plaintiffs' class action firms in the nation, has particular expertise in direct purchaser antitrust class actions, and has a team – led by Linda Nussbaum, an attorney with extensive experience as lead or co-lead counsel for direct purchaser plaintiffs in pharmaceutical antitrust class actions – with significant antitrust litigation knowledge from litigating cases nationwide. The G&E team of attorneys leading this case all are based in New York City. The firm was named to the National Law Journal's Plaintiffs' Hot List nearly every year since the List's inception and, in 2008, the Firm was named to the National Law Journal's Plaintiffs' Hall of Fame. G&E is also listed as one of America's Leading Business Lawyers by Chambers and Partners.[2]  In the last five years alone, G&E has recovered over $12 billion dollars for its clients. In 2008 and 2009, RiskMetrics Group recognized G&E for winning the highest average investor recovery in securities class actions.

The G&E attorneys primarily responsible for this litigation will be led by Ms. Nussbaum and include John D. Radice and Shelly L. Friedland. Ms. Nussbaum currently is lead or co-lead counsel in numerous direct-purchaser antitrust class actions, including *Meijer v. Mutual Pharmaceutical Company*, No. 12-cv167 (E.D. Pa.) (delayed generic entry pharmaceutical antitrust case concerning Skelaxin), *In re Photochromic Lens Antitrust Litigation*, No. 10-md-

---

[2]  G&E's firm resume is attached hereto as Exhibit A. Additional information about G&E is available on our website: www.gelaw.com.

02173-JDW-EAJ (M.D. Fla.), *Meijer, Inc., et al. v. Astrazeneca Pharmaceuticals, et al.*, No. 06-cv-52 (GMS) (D. Del) (delayed generic entry pharmaceutical antitrust case concerning Toprol), *In re DDAVP Direct Purchaser Antitrust Litigation*, No. 1:05-cv-2237 (S.D.N.Y.) (delayed generic entry pharmaceutical antitrust case concerning DDAVP), as well as in the recently-concluded *Norvir Antitrust Litigation* in which the class through co-lead counsel Ms. Nussbaum secured a settlement of $52 million three days into trial while coordinated plaintiffs continued to try the case and received a defense verdict on the antitrust claims, *see Meijer, Inc., et al. v. Abbott Laboratories*, No. 3:07-cv-5985 (CW) (N.D. Cal.) (pharmaceutical antitrust case concerning Norvir and Kaletra). Ms. Nussbaum also represents large corporate entities in individual direct purchaser antitrust actions in *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*, No. 1:05-md-1720 (JG) (JO) (E.D.N.Y.); *In re Chocolate Confectionary Antitrust Litigation*, No. 1:08-md-1935 (CCC) (M.D. Pa.); and *CVS Pharmacy v. American Express Travel Related Services, et al.*, No. 08-cv-2316 (NGG) (E.D.N.Y.).

Ms. Nussbaum has served as sole or co-lead counsel in many significant antitrust class actions which have resulted in substantial recoveries, many in the realm of hundreds of millions of dollars. *See, e.g.*, *In re Puerto Rican Cabotage Antitrust Litigation*, No. 08-md-1960 (DRD) (D.P.R.) (co-lead counsel); *In re Microcrystalline Cellulose Antitrust Litig.*, No. 01-CV-111 (E.D. Pa.) (co-lead counsel); *Oncology & Radiation Associates, P.A. v. Bristol Myers Squibb Co., et al.*, No. 01-cv-02313 (D.D.C.) (sole lead counsel); *North Shore Hematology-Oncology Associates, P.C. v. Bristol-Meyers Squibb Co.*, No. 04-cv-00248 (D.D.C.) (sole lead counsel); *In re Children's Ibuprofen Oral Suspension Antitrust Litig.*, No. 04-mc-0535 (D.D.C.) (sole lead counsel); *In re Relafen Antitrust Litig.*, No. 01-cv-12239 (D. Mass.) (co-lead counsel); *In re*

8

*Plastics Additives Antitrust Litig.*, No. 03-cv-2038 (E.D. Pa.) (co-lead counsel); *In re Remeron Antitrust Litig.*, No. 03-cv-00085 (D.N.J.) (co-lead counsel); *Meijer, et al. v. Warner Chilcott Holdings Company, III, Ltd., et al.*, No. 05-cv-2195 (CKK) (D.D.C.) (lead counsel committee).

Ms. Nussbaum was recently named Litigator of the Week by the AmLaw Litigation Daily for her role as trial counsel in the landmark trial in which her client, Kaiser Foundation Health Plan, successfully demonstrated that Pfizer's fraudulent marketing of Neurontin caused it to suffer injury totaling $142 million, post-trebling. Following that five-week trial, District Judge Patti Saris commented that "[this was] a fabulous trial[.] . . . [I]t's the kind of thing that you become a judge to sit on." *See In re Neurontin Marketing and Sales Practices Litigation*, No. 04-10981 (PBS) (D. Mass.). In the recently-concluded direct purchaser litigation concerning the prescription pharmaceutical Toprol, in which Ms. Nussbaum served as co-lead counsel, the court commended the efforts of counsel, noting that "everybody, at least in my presence, handled themselves professionally, appropriately, made strong arguments, [and made] strong presentations for their position[.]" *Meijer, Inc. v. AstraZeneca Pharms.*, LP, No. 06-052 (D. Del.) (Feb. 21, 2012). Similarly, then-Chief Judge Hogan commented about Ms. Nussbaum and her co-lead counsel in *In re Lorazepam & Clorazepate Antitrust Litigation*, No. 99-cv-00276 (D.D.C.): "Obviously, the skill of the attorneys, and I'm not going to spend the time reviewing it, I'm familiar with counsel, and they, as I said, are among the best antitrust litigators in the country."

Ms. Nussbaum is a member of the Advisory Board of the American Antitrust Institute and frequently lectures about various aspects of antitrust law. Ms. Nussbaum, together with Mr. Radice, has authored numerous articles including "The Evolving Challenges of Class Certification" presented at the American Antitrust Institute's Third Annual Symposium on

9

Private Antitrust Enforcement; "Daubert 15 Years Later: How Have Economists Fared?" presented at the ABA Section of Antitrust Law Spring Meeting; and "Where Do We Go Now? The Hatch-Waxman Act 25 Years Later: Successes, Failures and Prescriptions for the Future," published in the Rutgers Law Journal.

Mr. Radice, a former clerk for Judge Edith Brown Clement in the United States Court of Appeals for the Fifth Circuit, has litigated numerous complex antitrust class actions and has been selected for inclusion in Super Lawyers–Rising Stars Edition 2011. He concentrates his practice on antitrust class actions and has litigated some of the largest complex pharmaceutical antitrust cases where he has developed particular expertise addressing the economic issues at the heart of most antitrust cases.[3] Mr. Radice obtained his J.D. from New York University School of Law and graduated *magna cum laude* from Princeton University. Through the Arthur Garfield Hays Civil Liberties Program at New York University School of Law, where he was a Palmer Weber Fellow, Mr. Radice pursued internships at the NAACP Legal Defense & Education Fund and at the ACLU.

Ms. Friedland is an experienced litigator with approximately fifteen years of experience focusing exclusively over the past several years on representing plaintiffs in class actions. She was the principal attorney overseeing day-to-day management of the antitrust class action brought against Sirius XM satellite radio and she played a similar role in a case brought on behalf of nurses alleging a wage-fixing conspiracy against the two largest hospitals in Memphis, Tennessee. Ms. Friedland currently is on the team prosecuting anticompetitive recruiting practices in the high tech industry in Silicon Valley. Ms. Friedland is a *cum laude* graduate of

---

[3] *See, e.g.*, *In re Tricor Direct Purchaser Antitrust Litig.*, No. 05-cv-340 (D. Del.) (yielding a $250 million settlement after the start of trial in case alleging delayed entry of AB-

Harvard Law School, where she was an Executive Editor of the Human Rights Law Journal. She received her bachelor's degree from Columbia College, graduating *summa cum laude*.

### b.     Carella Byrne

Carella Byrne was founded over 30 years ago and has offices in Roseland, New Jersey. The firm has been involved in many of the largest and most complex court matters in the State of New Jersey. Senior Partner Brendan T. Byrne is a former two-term Governor of the State. In addition to Governor Byrne, several other attorneys have served with distinction in state, county and municipal government, as well as with regulatory agencies, and as directors of corporations and institutions. Carella Byrne's firm resume is annexed hereto as Exhibit B.

Carella Byrne offers the full range of legal services. The pertinent disciplines include general and complex litigation; patent prosecutions and litigation; corporate; tax; real estate; banking; trusts and estates; governmental/public policy, corporate acquisitions and dissolutions; and complex commercial transactions. This firm's experience and litigation skill extends beyond the State to include working with government officials and agencies nationwide. Carella Byrne is New Jersey's sole member of the State Capital Global Law Firm Group, a network of law firms located throughout the nation and across the globe. The firm currently has 37 lawyers, and a staff of over 100.

Carella Byrne also has broad-based experience in complex litigation, including class actions involving a wide and varied range of issues including federal securities law, breach of contract, ERISA, antitrust and consumer fraud. Indeed, Carella Byrne's past experience, range of varied practice areas, and current docket of sophisticated class action matters, demonstrates that Carella Byrne is more than capable, with co-counsel, of vigorously representing the interests

---

rated generic versions of Tricor); *Meijer, Inc., et al. v. Abbott Laboratories*, No. 3:07-cv-5985 (CW) (N.D. Cal.) ($52 million settlement).

of the proposed class in this case. James E. Cecchi has extensive experience in litigating in this District and in other federal courts. The following are representative class matters where Mr. Cecchi of Carella Byrne has been appointed to leadership positions:

- *In re Rail Freight Fuel Surcharge Antitrust Litigation*, MDL No. 1969 (PLF)(claim that major U.S. railroads conspired to fix prices through fuel surcharges).

- *In Re Effexor XR Antitrust Litigation,* Civil Action Nos. 11-5661(JAP)(LHG)(claims on behalf of indirect purchasers of brand-name drug alleging that manufacturer obtained patent by fraud and enforced patent by sham litigation to maintain illegal monopoly of brand-name drug)

- *In Re: Vytorin/Zetia Marketing, Sales Practices and Products Liability Litigation*, MDL No. 1938 (DMC); *In re Schering-Plough/Enhance Securities Litigation*, Civil Action No. 08-397(DMC); *In re Merck & Co., Inc. Vytorin/Zetia Securities Litigation*, Civil Action No. 08-2177(DMC) (consumer and securities fraud claims arising from marketing and sale of anti-cholesterol drugs Vytorin and Zetia).

- *In re Aetna UCR Litigation*, MDL No. 2020(FSH); *Franco v. CIGNA*, Civil Action No. 07-6039(SRC) (alleging that health insurers systematically underpaid out-of-network reimbursement for medical services using fraudulent database)

- *In re Johnson & Johnson Derivative Litigation,* Civil Action No. 10-2033(FLW); *Monk v. Johnson & Johnson*, Civil Action No. 10-4841(FLW) Carella Byrne is co-lead counsel in an action asserting shareholder derivative claims and is liaison counsel in separate securities fraud claims relating to allegations that Johnson & Johnson undertook several massive secret recalls of products, violated anti-kickback laws, and engaged in off-label marketing products which resulted in expenses and governmental fines of hundreds of millions of dollars.

- *Allapattah Services, Inc. v. Exxon Corporation*, Case No. 91-0986-Civ-Gold. (representing 34 state governments in administration of $1 billion settlement fund for claims arising from overcharges to gasoline dealers)

- *In re Mercedes-Benz Tele-Aid Contract Litigation*, MDL No. 1914(DRD)(consumer fraud claims arising from Mercedes' failure to notify Tele-Aid customers of mandated change from analog to digital system, and charging customers to replace system Mercedes knew would be obsolete)

- *In Re: Merck & Co., Inc., Securities, Derivative & "ERISA" Litigation*, MDL No. 1658 (SRC)(securities fraud claims arising from Merck's failure to disclose problems with commercial viability of anti-pain drug Vioxx)

- *In Re: Virgin Mobile USA IPO Litigation*, Lead Case No. 07-5619 (SDW)(securities fraud claims arising from disclosure of false financial information in initial offering)

- *Davis Landscape v. Hertz Equipment Rental*, Civil Action No. 06-3830(DMC) (claims that HERC's loss/damage waiver charges violate the New Jersey Consumer Fraud Act because it provides no benefit to customer)

- *Milliron v. T-Mobile*, Civil Action No. 08-4149 (JLL); *Larson v. Sprint Nextel Corp.*, Civil Action No. 07-5325 (JLL); *Hall v. AT&T Mobility*, Civil Action No. 07-5325 (JLL) (claims that flat-rate early termination fees in wireless phone contracts constituted unenforceable penalty clauses)

In addition, Lindsey H. Taylor, who will also be working on the matter at Carella Byrne, likewise has extensive experience in this District. In addition to participating in the above cases, he is one of the co-authors of New Jersey Federal Civil Procedure.

In addition to the class action litigation experience, as is set forth more fully in its firm resume, Carella Byrne also has a full patent department with extensive experience in the pharmaceutical industry, as well as experience in Hatch-Waxman litigation. Thus, in addition to having the in-house experience with respect to the antitrust aspects of this matter, it also has in-house experience with respect to the patent issues with will inevitably arise.

> 3. **Rule 23(g)(A)(iv).  G&E and Carella Byrne Are Willing And Able To Commit The Substantial Resources Needed To Prosecute This Litigation**

G&E and Carella Byrne have the financial, professional, investigative, and technological resources required to prosecute these claims. They are willing and able to devote and expend the vast resources necessary to properly prosecute this litigation. G&E's resources include millions of dollars for experts and consultants, the use of G&E's own proprietary software systems for analyzing electronic documents and the commitment of the numerous investigative and attorney

13

professionals needed to advance the complex claims here and represent Plaintiffs adequately against highly qualified defense counsel. G&E successfully prosecutes large, nationwide class actions and has been lead counsel in some of the largest class action recoveries in U.S. history, including: $3.2 billion settlement from Tyco International Ltd.; $895 million from United Healthcare; $450 million Pan-European settlement from Royal Dutch Shell; $448 million settlement from Global Crossing Ltd.; $420 million from Digex; $400 million recovery from Marsh & McLennan; and $400 million from Refco. G&E has in the past successfully managed complex antitrust litigations like this case and is well-prepared to do so here.

    **4. Rule 23(g) Discretionary Criteria: Appointment Of G&E and Carella Byrne Will Most Adequately Protect All Plaintiffs**

In addition to being the most adequate counsel under the mandatory criteria of Rule 23(g)(1)(A), G&E and Carella Byrne are the most adequate counsel under the following pertinent discretionary criteria. Carella Byrne is a New Jersey firm and G&E bases its entire team devoted to this action here in New York City, nearby to where this case will be litigated. Though electronic discovery reduces the importance of location, it in no way eliminates it and selecting as lead counsel attorneys located in close proximity to the courthouse who not need to travel far and who can most efficiently prosecute this litigation.

There can be no doubt that G&E and Carella Byrne are able to represent the Class fairly and adequately. *See* Fed. R. Civ. P. 23(g)(1)(B). Accordingly, appointment of Interim Lead Counsel and the assignment of responsibilities to G&E and Carella Byrne as set forth in Pretrial Order No. 1 is consistent with F.R.Civ.P. 23(g), as well as with the MANUAL'S recommendations regarding establishment of an organizational structure for counsel in furtherance of the ultimate goal of achieving "efficiency and economy" in the litigation. *See* MANUAL § 10.221.

14

### III.  Conclusion

For the reasons set forth above, and to provide for the orderly and efficient conduct of the Actions and any other related actions, including those subsequently filed or transferred, Plaintiffs respectfully request that the Court enter proposed Pretrial Order No. 1.

                                                                 CARELLA, BYRNE, CECCHI,
                                                                  OLSTEIN, BRODY & AGNELLO, P.C.
                                                                  Attorneys for Plaintiffs

                                                                By:   /s/ James E. Cecchi
                                                                        JAMES E. CECCHI

Dated: March 23, 2012

Linda P. Nussbaum
John D. Radice
Shelly L. Friedland
GRANT & EISENHOFER. P.A.
485 Lexington Avenue, 29th Floor
New York, NY 10017
(646) 722-8500

*Attorneys for Meijer, Inc. and Meijer Distribution, Inc.*