**COHN LIFLAND PEARLMAN
        HERRMANN & KNOPF LLP**
**PETER S. PEARLMAN**
Park 80 Plaza West-One
250 Pehle Avenue, Suite 401
Saddle Brook, NJ 07663
201-845-9600
psp@njlawfirm.com
*Attorney for Plaintiff*

*[Additional Counsel Listed On Signature Page]*

| | |
|---|---|
| **LOUISIANA WHOLESALE DRUG CO., INC.,** on behalf of itself and all others similarly situated,<br><br>                    **Plaintiff,**<br><br>**V.**<br><br>**SMITHKLINE BEECHAM CORPORATION d/b/a GLAXOSMITHKLINE, TEVA PHARMACEUTICAL INDUSTRIES LTD., and TEVA PHARMACEUTICALS**<br><br>                    **Defendants.** | **Civil Action No. 2:12-cv-00995 (WHW-MCA)** |
| **KING DRUG COMPANY OF FLORENCE, INC.,** on behalf of itself and all others similarly situated,<br><br>                    **Plaintiff,**<br><br>**V.**<br><br>**SMITHKLINE BEECHAM CORPORATION d/b/a GLAXOSMITHKLINE, TEVA PHARMACEUTICAL INDUSTRIES LTD., and TEVA PHARMACEUTICALS**<br><br>                    **Defendants.** | **Civil Action No. 2:12-cv-01607 (WHW-MCA)** |
| **MEIJER DISTRIBUTION INC., AND MEIJER, INC.,** on behalf of itself and all others similarly situated, | **Civil Action No. 2:12-cv-01218-WHW-MCA** |

|  |  |
|---|---|
| Plaintiff, <br><br> V. <br><br> **SMITHKLINE BEECHAM CORPORATION d/b/a GLAXOSMITHKLINE, TEVA PHARMACEUTICAL INDUSTRIES LTD., and TEVA PHARMACEUTICALS** <br><br> Defendants. |  |

**MEMORANDUM OF LAW: (1) IN OPPOSITION TO MOTION OF MEIJER INC. AND MEIJER DISTRIBUTION INC. TO CONSOLIDATE CASES AND APPOINT INTERIM CO-LEAD AND LIAISON COUNSEL UNDER FED R. CIV. P. 23(g); AND (2) IN SUPPORT OF CROSS MOTION OF PLAINTIFFS LOUISIANA WHOLESALE DRUG CO., INC. AND KING DRUG COMPANY OF FLORENCE, INC. FOR THE ENTRY OF CASE MANAGEMENT ORDER NO. 1 INCLUDING THE CONSOLIDATION OF CASES AND THE APPOINTMENT OF INTERIM CLASS COUNSEL AND LIAISON COUNSEL**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................... iii

I.      INTRODUCTION.................................................................................................. 1

II.     FACTUAL BACKGROUND................................................................................ 1

III.    PROCEDURAL BACKGROUND ....................................................................... 3

IV.     ARGUMENT ........................................................................................................ 4

        A.    LWD and King Are More Aligned With The Interests
              of The Class Than Meijer............................................................................ 4

        B.    Garwin Gerstein Is "Best Able to Represent The Interests
              of The Class." .............................................................................................. 6

              i.    Garwin Gerstein Has Extensive Experience in Representing
                    Direct Purchasers in Pharmaceutical Antitrust Litigation .......... 6

              ii.   Garwin Gerstein and Its Close Group Have The Most
                    Familiarity With This Case ....................................................... 10

        C.    Garwin Gerstein Meets The Requirements of 23(g)(1)(A)(i-iv) ................... 11

              i.    Garwin Gerstein Possesses the Experience Necessary to
                    Best Represent the Interests of the Class .................................. 11

              ii.   Garwin Gerstein and Its Co-Counsel Have Conducted
                    An Extensive Factual And Legal Investigation Into The
                    Claims at Issue in This Litigation ............................................ 13

              iii.  Garwin Gerstein Possesses Knowledge of the Law
                    Applicable to Pharmaceutical Antitrust Litigation ................... 14

              iv.   Garwin Gerstein Has The Resources Necessary To
                    Prosecute This Action ............................................................. 15

        D.    Meijer's Counsels' Application for Lead Counsel Should
              Be Denied .................................................................................................. 15

        E.    Cohn Lifland Is Ideally Suited to Be Liaison Counsel ............................... 17

        F.    Consolidation for Pretrial Purposes .......................................................... 18

G.   Garwin Gerstein Should Be Sole Lead...............................................18

H.   LWD Proposes The Following Schedule Leading up
     to A Rule 16 Conference ........................................................18

III.   CONCLUSION ........................................................19

## TABLE OF AUTHORITIES

### FEDERAL CASES

*In re Cardizem CD Antitrust Litigation,*
   218 F.R.D. 508 (E.D. Mich. 2003) ...............................................................7, 9, 12

*In re Cendant Corp.,*
   232 F. Supp. 2d 327 (D.N.J. 2002) ...............................................................8

*Davis v. Eastman Kodak Co.,*
   758 F. Supp. 2d 190 (W.D.N.Y. 2010) ...........................................................8

*Delaware Valley Surgical Supply Inc. v. Johnson & Johnson,*
   523 F.3d 1116 (9th Cir. 2008) .....................................................................17

*Hanover Shoe v. United Shoe Machine Corp.,*
   392 U.S. 481 (1968) ...................................................................................2

*Illinois Brick v. Illinois,*
   431 U.S. 720 (1977)....................................................................................2

*In re K-Dur Antitrust Litigation,*
   MDL Docket No. 1419, 2008 U.S. Dist. LEXIS 118396 (D.N.J. Apr. 14, 2008)...9, 13, 18

*In re K-Dur Antitrust Litig.,*
   MDL Docket No. 1419, 2009 U.S. Dist. LEXIS 126249 (D.N.J. Feb. 6, 2009) .................9

*In re Lorazepam & Clorazepate Antitrust Litigation,*
   MDL Docket No. 1290, 2003 U.S. Dist. LEXIS 12344 (D.D.C. June 16, 2003)........16, 17

*Warren Gen. Hosp. v. Amgen Inc.,*
   643 F.3d 77 (3d Cir. 2011)..........................................................................17

### DOCKETED CASES

*In re Androgel Antitrust Litigation (II),*
   MDL Docket No. 2084 (N.D.Ga.) ...................................................................13

*In re Buspirone Antitrust Litigation,*
   MDL Docket No. 1410 (S.D.N.Y.)....................................................................12

*In re Cardizem CD Antitrust Litigation,*
   MDL Docket No. 1278 (E.D.Mich.)..............................................................12, 15

*In re DDAVP Direct Purchaser Antitrust Litigation,*
  Civil Action No. 05-cv-2237 (S.D.N.Y.) ....................................................................12

*In re K-Dur Antitrust Litigation,*
  No. 01-cv-1652 (D.N.J.) ............................................................................................13

*King Drug Company of Florence, Inc. v. Cephalon, Inc., et al.,*
  No.06-cv-1797 (E.D.Pa.) ...........................................................................................13

*In re Lorazepam & Clorazepate Antitrust Litigation,*
  MDL Docket No. 1290 (D.D.C.) ................................................................................16

*Meijer, Inc., et al., v. Abbott Laboratories,*
  Civil Action No. 07-cv-5985 (N.D.Ca.) ....................................................................12

*In re Mushroom Direct Purchaser Antitrust Litigation,*
  No. 06-cv-620-TON (E.D. Pa.) ..................................................................................10

*In re Neurontin Antitrust Litigation,*
  02-cv-1390, MDL Docket No. 1479 (D.N.J.) ..........................................................9, 13

*In re Nifedipine Antitrust Litigation,*
  MDL No. 1515 (D.D.C.) .............................................................................................12

*In re OxyContin Antitrust Litigation,*
  MDL No. 04-md-1603 (S.D.N.Y.) .............................................................................12

*In re Prograf Antirust Litigation,*
  MDL Docket No. 2242 (D.Mass.) ...............................................................................13

*In re Relafen Antitrust Litigation,*
  No. 01-cv-12239 (D. Mass.) ...............................................................................5, 12, 16

*In re Remeron Direct Purchaser Antitrust Litigation,*
  No. 03-cv-0085 (D.N.J.) .....................................................................................5, 9, 12, 16

*Rochester Drug Co-Operative, Inc., v. Braintree Laboratories, Inc.,*
  Civil Action No. 07-cv-0142 (D.Del.) ........................................................................12

*SmithKline Beecham Corp. v. Teva Pharmaceuticals USA, Inc.,*
  Nos. 02-cv-3779 (D.N.J.) ............................................................................................14

*In re Terazosin Hydrochloride Antitrust Litig.,*
  MDL Docket No. 1317 (S.D. Fla.) ..............................................................................12

*Teva Pharmaceutical Industries Ltd, et. al., v. SmithKline Beecham Corp.,*

     No. 08-cv-3706 (D.N.J.) ............................................................................14

*In re Tricor Antitrust Litig.,*
     Civil Action No. 05-cv-340 (D.Del.) .........................................................12

*In re Wellbutrin XL Antitrust Litigation,*
     No. 08-cv-2431 (E.D.Pa.) ...........................................................................5

## FEDERAL STATUTES

15 U.S.C. § 2 ......................................................................................................2

15 U.S.C. § 4 ......................................................................................................2

Fed.R.Civ.P. 23 ........................................................................... passim

21 U.S.C. § 355......................................................................................................2

## I.      INTRODUCTION

Direct Purchaser Plaintiffs Louisiana Wholesale Drug Company, Inc. ("LWD"), and

King Drug Company of Florence, Inc. ("King") (together, "LWD Plaintiffs"), hereby oppose so

much of Meijer Inc.'s, and Meijer Distribution Inc.'s Notice of Motion (Doc. No. 11) as seeks to

appoint Interim Co-Lead and Liaison Counsel under Fed R. Civ. P. 23(g) (the "Meijer Motion").[1]

LWD Plaintiffs also cross move for appointment of Garwin Gerstein & Fisher LLP ("Garwin

Gerstein") as lead interim class counsel, and Cohn Lifland Pearlman Herrmann & Knopf LLP

("Cohn Lifland") as liaison counsel in these antitrust class action suits alleging that Defendants

restrained competition in the market for Lamictal (lamotrigine) and its generic equivalents. The

LWD complaint was filed on February 17, 2012, after an extensive investigation by counsel. The

LWD complaint was the result of a wholly independent investigation and neither relied on the

findings of a governmental investigation nor the allegations of any previously filed action. In

contrast, the Meijer Inc., and Meijer Distribution, Inc., (together, "Meijer") complaint was filed

eleven days later, on February 28, 2012, after LWD's complaint was made available on PACER,

and after allegations were publicly reported in legal news services.[2] The Meijer complaint

repeats the same core allegations as the LWD complaint.

## II.     FACTUAL BACKGROUND

The putative class in these cases is unique in that it is principally comprised of

pharmaceutical wholesalers – sophisticated business entities – that purchase Lamictal product

directly from SmithKline Beecham Corporation d/b/a GlaxoSmithKline ("GSK"). This is one of

---

[1] As set forth herein, LWD and King do not oppose that portion of the Meijer Motion that seeks
to consolidate these cases.
[2] *See* GSK, Teva Face Antitrust Class Action Over Lamictal Deal,
http://www.law360.com/articles/312480/gsk-teva-face-antitrust-class-action-over-lamictal-deal.
Last accessed April 3, 2012.

a series of cases involving the unlawful exclusion of generic drugs from the market, implicating

the Hatch-Waxman Act (21 U.S.C. § 355) and the antitrust laws (15 U.S.C. § 2; 15 U.S.C. § 4).

In all of these cases, federal antitrust law only permits the direct purchasers, i.e., a discrete class

of drug wholesalers who purchased directly from the manufacturer, to bring an action for

damages. *See Illinois Brick v. Illinois*, 431 U.S. 720, 745-46 (1977); *Hanover Shoe v. United

Shoe Mach. Corp.*, 392 U.S. 481 (1968).

This contest for lead plaintiffs and lead counsel is not about whether the parties and their

counsel are nominally adequate – LWD Plaintiffs are confident that all of the plaintiffs and their

counsel will satisfy the basic requirements of Fed. R. Civ. P. 23. Instead, the critical question is

which plaintiffs and counsel are "best able to represent the interests of the class." Fed. R. Civ. P.

23(g)(2). The LWD Plaintiffs and their counsel have obtained well over one billion dollars in

settlements in similar antitrust cases on behalf of the entities that principally comprise the class

here, have been resolute in their representation of the class's interests, and have the support and

confidence of many members of the class.

Garwin Gerstein:

- is counsel in the first action filed;

- has been appointed lead or co-lead counsel in sixteen Hatch-Waxman actions in which a number of different pharmaceutical wholesalers have been the named plaintiff(s);

- has worked closely on all of these cases with Smith Segura & Raphael, LLP ("SSR"), and Odom & Des Roches, LLP ("ODR"). Each of these firms has obtained expertise in the intricacies of Hatch-Waxman litigation (*see* Declaration of David P. Smith, and Declaration of Stuart Des Roches, submitted contemporaneously herewith);

- has obtained over one billion dollars in settlements for many of the putative class members here;

- has been extremely selective in actions brought;

- has a continuing access to and close attorney-client relationships with many of the class members as a result of building long term personal relationships with them;

- has a direct understanding of the actual class members' goals and objectives, as though engaged in individual private litigation; and

- has direct purchasers as clients, as opposed to Meijer, which is not itself a direct purchaser but rather is proceeding only by virtue of an assignment from a direct purchaser, and therefore is not as closely aligned with the interests of the class members as are LWD and King. This is evidenced by the nine putative class member declarations supporting Garwin Gerstein for lead counsel in this case. *See*:

  - Declaration of Chris Mitiguy, Director of Vendor Relations of Burlington Drug Company, Inc., Exhibit A to Declaration of Bruce Gerstein ("Gerstein Dec.");

  - Declaration of Gary Prester, Vice President of Marketing of Dik Drug Co., Exhibit B to Gerstein Dec.;

  - Declaration of W. Keith Elmore, President of King Drug Company of Florence, Exhibit C to Gerstein Dec.;

  - Declaration of Chad Gielen, President and CEO of Louisiana Wholesale Drug Company, Inc., Exhibit D to Gerstein Dec.;

  - Declaration of Anthony V. Rattini, President and CEO of Miami-Luken, Inc., Exhibit E to Gerstein Dec.;

  - Declaration of Thomas G. Schoen, President of Prescription Supply, Inc., Exhibit F to Gerstein Dec.;

  - Declaration of Ken Couch, President of J.M. Smith Corp., d/b/a Smith Drug Company, Exhibit G to Gerstein Dec.;

  - Declaration of Stephen Shoneff, CEO of Valley Wholesale Drug Co., Inc., Exhibit H to Gerstein Dec.;

  - Declaration of Gregory A. Drew, President of Value Drug Company, Exhibit I to Gerstein Dec.

## III.    PROCEDURAL BACKGROUND

On February 17, 2012, LWD filed an antitrust action in this district, individually and on

behalf of all other direct purchasers, against GSK, Teva Pharmaceutical Industries Ltd., and Teva

Pharmaceuticals (collectively "Defendants") alleging that Defendants unlawfully delayed and

restrained competition in the market for the drug Lamictal (lamotrigine). *Louisiana Wholesale Drug Co., Inc. v. Smithkline Beecham Corporation d/b/a Glaxosmithkline, Teva Pharmaceutical Industries Ltd., and Teva Phamaceuticals*, No. 2:12-cv-00995-WHW-MCA. Eleven days later, Meijer filed a similar action repeating LWD's core allegations. On March 23, 2012, Meijer filed a motion seeking to consolidate all Lamictal cases and appoint Grant & Eisenhofer, P.A. ("G&E") and Carella, Byrne, Cecchi, Olstein, Brody & Agnello, P.C. ("Carella Byrne") as co-lead and interim class counsel.

LWD and King, plaintiffs in two of the three actions filed, do not oppose consolidation but request that the Court enter the [Proposed] Case Management Order submitted herewith, which appoints Garwin Gerstein as lead interim class counsel and Cohn Lifland as liaison counsel. LWD and King oppose the appointment of G&E and Carella Byrne as lead or co-lead interim class counsel. These firms are seeking to opportunistically distinguish themselves from the other counsel in this case solely on the basis that they have filed a separate suit. If their application is granted (or if the Court were to appoint them as co-lead interim counsel with Garwin Gerstein) G&E and Carella Byrne will control the strategic direction of this case, even though they represent a single plaintiff with a small financial stake in the litigation and which sued only by means of an assignment.

## IV.   ARGUMENT

### A.   *LWD and King Are More Aligned With The Interests of The Class Than Meijer.*

The contest presented here is a study in contrasts. The LWD Plaintiffs are pharmaceutical wholesalers whose interests are indistinguishable for class certification purposes from the other pharmaceutical wholesalers that principally comprise the class. Each LWD Plaintiff has been a class representative in several other cases and each has been resolute in representing the class's

interests. LWD as sole or co-plaintiff is responsible for recoveries of over one billion dollars on behalf of similar classes of direct purchasers.

In contrast, Meijer is a regional retail chain that sells general merchandise and is an indirect purchaser of pharmaceutical products. It buys its pharmaceutical products from wholesalers (the actual direct purchasers and natural members of the class). In this case Meijer is proceeding by an assignment from a direct purchaser pharmaceutical wholesaler. Meijer's business is very different from the businesses of the other class members and therefore, unlike the LWD Plaintiffs, it is not a natural class member and its interests are not identical with the interests of the wholesaler class members.

More significantly, Meijer has shown itself to be unreliable as a class representative on a number of occasions in prior litigation. In at least three cases, Meijer, at the time a putative class representative, withdrew from the case prematurely. Two of the cases - *In re Relafen Antitrust Litigation*, No. 01-cv-12239, (D. Mass.) D.E. 92[3] and *In re Remeron Direct Purchaser Antitrust Litigation*, No. 03-cv-0085, (D.N.J.) D.E. 61[4] – continued with LWD as the sole class plaintiff, and ultimately resulted in settlements of $175 million and $75 million respectively. In the third - *In re Wellbutrin XL Antitrust Litigation*, No. 08-cv-2431 (E.D.Pa.) – Meijer withdrew while a motion to compel discovery was pending, and the case is continuing with another class representative that intervened. *See* Exhibit L to Gerstein Dec., Order, *In re Wellbutrin XL Antitrust Litigation*, No. 08-cv-2431 (E.D.Pa.) D.E. 162 (dismissing Meijer, denying defendant's motion to compel against discovery from Meijer as moot).

---

[3] Exhibit J to Gerstein Dec.
[4] Exhibit K to Gerstein Dec.

On the other hand, LWD and King have never withdrawn from any proposed or certified

class action prior to approval of a proposed settlement or entry of final judgment. In fact, no

pharmaceutical wholesaler that Garwin Gerstein, SSR or ODR have ever represented has ever

done so. *See* Declaration of David P. Smith at ¶ 5.

### B.   Garwin Gerstein Is "Best Able to Represent The Interests of The Class."

Pursuant to Fed. R. Civ. P. 23(g)(2), "[i]f more than one adequate applicant seeks

appointment [as class counsel], **the court must appoint the applicant best able to represent**

**the interests of the class.**" *Id.* (Emphasis added.)[5] LWD and King submit that Garwin Gerstein

is the firm "best able to represent the interests of the class."

          i.       *Garwin Gerstein Has Extensive Experience in Representing Direct*
                      *Purchasers in Pharmaceutical Antitrust Litigation*

Garwin Gerstein is a well known litigation firm specializing in class and shareholder

derivative actions, with a particular concentration over the last fourteen years in Hatch-Waxman

antitrust class actions on behalf of pharmaceutical wholesalers. Bruce E. Gerstein is the senior

partner of Garwin Gerstein and has personally supervised, and has been intimately involved in,

the litigation of these actions. Garwin Gerstein has been appointed lead or co-lead in sixteen

Hatch-Waxman antitrust actions. In each of those cases, Garwin Gerstein has worked closely

with David P. Smith and the other attorneys of SSR, and Stuart Des Roches, John G. Odom and

the other attorneys of ODR, which have garnered specific expertise in the intricacies of the

Hatch-Waxman regulatory scheme, the operational issues relating to production and marketing

---

[5]*See also,* 5-23 Moore's Federal Practice - Civil § 23.122 (3d. ed. 2007) ("If there are multiple
applicants for appointment as class counsel, the court should consider all of them and measure
them against the Rule's criteria in the same manner as it would evaluate a sole application.
However, with a sole applicant, the court's task is to assure itself that the applicant is qualified. If
there are multiple applications, the court must go beyond that evaluation, and must select the
*most* qualified of all of the applicants.")

of pharmaceuticals, the many economic issues that are specific to these cases, and taking these

cases to trial.[6] *See* Declarations of David P. Smith and Stuart Des Roches, submitted herewith. In

fact, Garwin Gerstein, SSR and ODR are pioneers in Hatch-Waxman antitrust cases, having been

involved in the first such action in 1998. In that case, *In re Cardizem CD Antitrust Litig.*, 218

F.R.D. 508, 534 (E.D. Mich. 2003), Judge Nancy G. Edmunds recognized these firms'

trailblazing efforts, stating:

> Class Counsel brought this private antitrust action seeking to
> enforce the antitrust laws and alleging that a brand-name drug
> manufacturer had colluded with a generic competitor to block
> cheaper generic versions of the brand-name drug from coming to
> market. This case has helped put prescription drug pricing and
> marketing tactics at the forefront of media, Congressional scrutiny,
> and judicial scrutiny. Encouraging qualified counsel to bring
> inherently difficult and risky but beneficial class actions like this
> case benefits society.

Garwin Gerstein, SSR, and ODR have together, during the course of litigating the

aforementioned cases, diligently worked in their capacity as class counsel to build a close

attorney-client relationship with many class members. To these firms, class members are not

merely an abstraction, but individual, real clients. Garwin Gerstein, SSR and ODR, in their

capacity as class counsel regularly advise and consult with the various class members in each

case. As a consequence, over the course of fourteen years of representing closely related classes,

these firms have developed a personal relationship with, and earned the confidence of, many of

the class members, as evidenced by the nine declarations supporting Garwin Gerstein's

application for lead counsel. *See* Exhibits A through I to Gerstein Dec.

---

[6] Garwin Gerstein, SSR and ODR have also frequently worked with both Cohn Lifland and
Heim, Payne & Chorush, L.L.P ("HPC"). As set forth *infra*, Cohn Lifland is experienced in
Hatch-Waxman antitrust cases and eminently qualified to act as liaison counsel. HPC is a
preeminent patent law firm that played a central role in many of the Hatch-Waxman cases listed
on pages 11-12, *infra*.

The LWD plaintiffs believe that this personal relationship with the class is a significant factor that the Court should consider in determining who is "best able to represent the interests of the class." *See* 5-23 Moore's Federal Practice - Civil § 23.02. ("The class-action suit … permits single-action litigation … involving similar or identical questions of law and fact that arise from a common set of operative facts. Litigation by or against a class constitutes an exception to the usual rule that litigation is conducted by, on behalf of, or against the named parties only.") Here, Garwin Gerstein has direct knowledge of the class's immediate and long term interests and goals and has been steadfast in working to achieve them. This has meant declining less than optimal settlements and never negotiating settlements that contain terms that can have serious legal complications on other pending and future Hatch-Waxman antitrust cases.

Garwin Gerstein and Bruce E. Gerstein in particular have been recognized by courts for their competence and their ability to litigate complex cases. Indeed, this Court, in a hard fought and complex stockholder's derivative action on behalf of Cendant Corporation that resulted in a $54 million settlement paid by the corporation's individual directors, commented that "[t]here is little doubt that [Garwin Gerstein] is highly skilled and experienced in litigating shareholder derivative suits." *In re Cendant Corp.*, 232 F. Supp. 2d 327, 331 (D.N.J. 2002).

In *Davis v. Eastman Kodak Co.*, 758 F. Supp. 2d 190 (W.D.N.Y. 2010), a race discrimination class action against the Eastman Kodak Company, the court stated:

> In my fifteen years on the bench, no case has been litigated with more skill, tenacity and legal professionalism than this case. The clients, corporate and individual, should be proud of the manner in which their legal interests were brought before and presented to the Court by their lawyers and law firms…

*Davis*, 758 F. Supp. 2d at 193, 203. In commenting specifically about Mr. Gerstein and another attorney, the court continued:

8

> ...the Court would be remiss if it did not commend class counsel
> and all those who worked for firms representing the thousands of
> current and former employees of Kodak for the outstanding job
> they did in representing the interests of their clients...Their legal
> work in an extraordinarily complex case was exemplary, their
> tireless commitment to seeking justice for their clients was
> unparalleled and their conduct as officers of the court was beyond
> reproach.

*Id.* And Mr. Gerstein and Garwin Gerstein as lead or co-lead counsel have been praised in

numerous similar Hatch-Waxman antitrust cases. In *In re Cardizem CD Antitrust Litig.*, 218

F.R.D at 534, the court stated:

> This Court would be remiss if it failed to acknowledge the high
> level of competence, experience, skill and hard work demonstrated
> by Counsel on both sides throughout this litigation. Both Plaintiffs'
> Counsel and Defendants' Counsel are all seasoned, highly
> competent professionals with years of experience in litigating
> complex antitrust actions. From the date this action began,
> Plaintiffs' Counsel has aggressively prosecuted and Defendants'
> Counsel has vigorously defended on their clients' behalf, while
> displaying the utmost skill, courtesy, and professionalism.

In *In re K-Dur Antitrust Litigation*, the court, in certifying a direct purchaser class, found

that "counsel for the proposed Class have vigorously and capably prosecuted this action,

conducting appropriate discovery and presenting detailed analyses in memoranda, expert

declarations and oral argument." *In re K-Dur Antitrust Litig.*, MDL Docket No. 1419, 2008 U.S.

Dist. LEXIS 118396 at 31, (D.N.J. Apr. 14, 2008)[7]. The Honorable Faith S. Hochberg also

appointed Garwin Gerstein co-lead counsel in *In re Remeron Antitrust Litigation*, 03-cv-00085,

(D.N.J), D.E. 181 (Exhibit M to Gerstein Dec.), and in *In re Neurontin Antitrust Litigation*, 02-

---

[7] From a report and recommendation entered by Special Master Stephen M. Orlofsky,
subsequently adopted by Judge Greenaway on December 30, 2008. *See In re K-Dur Antitrust
Litig.*, MDL Docket No. 1419, 2009 U.S. Dist. LEXIS 126249 at 22-23, fn. 9, (D.N.J. Feb. 6,
2009).

cv-1390, MDL Docket No. 1479 (D.N.J.), D.E 27 (Exhibit N to Gerstein Dec.)[8]. And as Judge

Koeltl of the Southern District of New York commented in *Buspirone*, "[t]he quality of

representation was very high. The case was vigorously litigated on both sides and the quality of

the lawyers in the case was excellent." *See* Exhibit O to Gerstein Dec., Transcript of April 11,

2004 Proceedings at 41-42.

In strikingly similar circumstances as those presented here, where Meijer's counsel Linda

Nussbaum[9] and her firm filed a second complaint on behalf of Meijer after Garwin Gerstein,

SSR, ODR and others filed the initial complaint, the court rejected Ms. Nussbaum's firm's

application for lead counsel and instead appointed Garwin Gerstein lead counsel, holding:

> I find that Messrs. Gerstein, Silverman, and Landau of Garwin
> Gerstein would be best able to represent the interests of the class
> for the following reasons: (1) Garwin Gerstein represents six of the
> eight plaintiffs, which are large direct purchasers of mushrooms,
> and have filed class action complaints against defendants; (2) it has
> spent several months identifying and investigating plaintiffs'
> claims as well as their factual and legal basis; (3) the firm filed
> those five class actions promptly after conducting a thorough
> investigation; (4) it is an experienced antitrust litigation firm that
> frequently represents direct purchasers and is therefore very
> familiar with antitrust class actions; and (5) the firm has and will
> commit the necessary resources to prosecute this action.

*In re Mushroom Direct Purchaser Antitrust Litig.*, No. 06-cv-620-TON (E.D. Pa.), D.E. 45, at 12

(Exhibit P to Gerstein Dec.).

> ii. *Garwin Gerstein and Its Close Group Have The Most Familiarity With*
> *This Case.*

---

[8] By Magistrate Judge Mark Falk.
[9] Meijer's principal attorney at G&E, Linda Nussbaum, has represented Meijer as an assignee in
at least thirty three Hatch-Waxman direct purchaser antitrust cases.

LWD & King's counsel investigated and analyzed the facts in this case and crafted the extensive and detailed complaint that was the first complaint filed in these cases. Legal commentators have noted that in the context of appointment of lead counsel, the firm that develops the case is the firm "best able to represent the interests of the class":

> [i]n a case with a plaintiff class, the process of drafting the complaint requires some investigatory and analytical effort, tasks that strangers to the action most likely will not have undertaken. All other things being equal, when an attorney has performed these or other investigative and analytical tasks before making the application for appointment, *he or she is in a better position to represent the class fairly and adequately than attorneys who did not undertake those tasks*.

Moore's Federal Practice § 23.120[3][a] (3d. ed. 2007) (emphasis added).

### C.   *Garwin Gerstein Meets The Requirements of 23(g)(1)(A)(i-iv).*

In appointing lead counsel, the Court should consider: (a) the work counsel has done in identifying or investigating potential claims in the action; (b) counsel's experience in handling class actions, other complex litigation; and claims of the type asserted in the action; (c) counsel's knowledge of the applicable law; and (d) the resources counsel will commit to representing the class. *See* Fed.R.Civ.P. 23(g)(1)(A)(i)-(iv).  As set forth below, Garwin Gerstein's exceptional qualifications – as recognized by the Courts, including this one – demonstrate that Garwin Gerstein satisfies all of the requirements set forth in Federal Rule of Civil Procedure 23(g)(1)(A)(i)-(iv).

### i.   *Garwin Gerstein Possesses the Experience Necessary to Best Represent the Interests of the Class*

Garwin Gerstein has jointly represented direct purchaser class plaintiffs in Hatch-Waxman antitrust litigation since at least 1998, and together with SSR and ODR, is among the most experienced and successful Hatch-Waxman antitrust litigation firms in the country.  Garwin

Gerstein has served as lead or co-lead counsel in numerous successful direct purchaser antitrust actions that were comprised principally of the same wholesalers that will likely constitute the class here. These include the following settled cases:

- *In re Cardizem CD Antitrust Litig.,* MDL Docket No. 1278 (E.D.Mich.) ($110 million) (co-lead);

- *In re Buspirone Antitrust Litig.,* MDL Docket No. 1410 (S.D.N.Y.) ($220 million) (co-lead);

- *In re Relafen Antitrust Litig.,* Master File No. 01-12239 (D.Mass.) ($175 million) (co-lead);

- *In re Terazosin Hydrochloride Antitrust Litig.,* MDL Docket No. 1317 (S.D. Fla.) ($75 million) (co-lead);

- *In re Remeron Antitrust Litig.,* Civil Action No. 03-cv-323 (D.N.J.) ($75 million) (co-lead);

- *In re Tricor Antitrust Litig.,* Civil Action No. 05-cv-340 (D.Del.) ($250 *million*) (sole lead);[10]

- *In re Nifedipine Antitrust Litigation,* MDL No. 1515 (D.D.C.) ($35 million) (co-lead);

- *Meijer, Inc., et al., v. Abbott Laboratories,* Civil Action No. 07-cv-5985 (N.D.Ca.) ($52 million) (co-lead);

- *Rochester Drug Co-Operative, Inc., v. Braintree Laboratories, Inc.,* Civil Action No. 07-cv-0142 (D.Del.) ($17,250,000) (co-lead);

- *In re OxyContin Antitrust Litigation,* MDL No. 04-md-1603 (S.D.N.Y.) ($16,000,000) (co-lead);

- *In re DDAVP Direct Purchaser Antitrust Litigation,* Civil Action No. 05-cv-2237 (S.D.N.Y.) ($16,750,000) (co-lead).

---

[10] The Meijer Motion touts *In re Tricor* as one of its major successes (*See* Meijer Motion at pp. 10-11, *fn.* 3) but fails to point out that Garwin Gerstein was sole lead in that case. Order, *In re Tricor Antitrust Litig.,* Civil Action No. 05-cv-340, (D.Del.), Exhibit Q to Gerstein Dec.. Nor does it point out that ODR was lead trial counsel for the direct purchaser class.

Additionally, Garwin Gerstein is currently serving as court-appointed lead or co-lead counsel in several other complex pharmaceutical antitrust litigations. For example:

- *King Drug Company of Florence, Inc. v. Cephalon, Inc., et al.* No.06-cv-1797 (E.D.Pa.) (sole lead);

- *In re Androgel Antitrust Litigation (II)*, MDL Docket No. 2084 (N.D.Ga.) (co-lead counsel);

- *In re Neurontin Antitrust Litig.,* MDL Docket No. 1479 (D.N.J.) (FSH) (co-lead counsel);

- *In re K-Dur Antitrust Litigation*, No. 01-cv-1652 (D.N.J.) (JAG) (co-lead counsel);

- *In re Prograf Antirust Litig.,* MDL Docket No. 2242 (D.Mass.) (co-lead counsel);

Garwin Gerstein, together with SSR and ODR, have expertly and consistently performed the critical work in those cases, including: (a) formulating and implementing the litigation strategy; (b) writing briefs and arguing key motions; (c) taking and defending the depositions of key fact and expert witnesses; and (d) successfully negotiating multi-million dollar settlements for the benefit of class members. Garwin Gerstein's leadership and excellence as class counsel has been recognized repeatedly by the courts. See, supra, at pp. 7-10.[11]

> ii. *Garwin Gerstein and Its Co-Counsel Have Conducted An Extensive Factual And Legal Investigation Into The Claims at Issue in This Litigation*

Garwin Gerstein, together with its co-counsel, conducted extensive factual investigations and thoroughly researched and analyzed the complex legal issues that they anticipate will arise in this case, prior to filing the first-filed action. *See* Gerstein Dec. at ¶ 31. The quality of each of these firms' investigatory work is evident in the highly detailed allegations of the LWD and King

---

[11] See, Exhibit U to Gerstein Dec., Garwin Gerstein firm résumé.

complaints. By contrast, Meijer's complaint, filed almost two weeks after LWD's, essentially repeats the same core allegations.[12]

Because Garwin Gerstein, SSR and ODR have, from the outset, thoroughly and independently investigated the facts and legal issues relevant to this litigation, Garwin Gerstein's appointment as lead counsel is appropriate. Specifically, before filing the complaint, Garwin Gerstein, SSR and ODR monitored and researched both the patent litigation between the Defendants,[13] as well as the parties' subsequent contract litigation regarding GSK's obligations to supply product pursuant to the patent settlement agreement.[14] This involved scores of hours of review of pleadings, briefs, exhibits and transcripts, which counsel procured at their expense, along with secondary sources that support the allegations of their complaint. Further, they investigated causation, damage, regulatory, and manufacturing issues to ensure a viable claim exists that could result in significant recovery for the class.

### iii.  Garwin Gerstein Possesses Knowledge of the Law Applicable to Pharmaceutical Antitrust Litigation

Having served as lead or co-lead counsel in the numerous direct purchaser antitrust class actions, Garwin Gerstein has honed its knowledge in the antitrust, patent and regulatory law that will be applicable in this litigation. Garwin Gerstein is well-versed in the complex factual issues that arise in litigating direct purchaser pharmaceutical antitrust actions, including highly technical manufacturing, financial, patent and causation issues. *See* Gerstein Dec. at ¶ 30. This same group of firms has also engaged in extensive jury focus sessions regarding Hatch-Waxman

---

[12] The Meijer complaint also contains an allegation of fraudulent concealment.

[13] *SmithKline Beecham Corp. v. Teva Pharmaceuticals USA, Inc.*, Nos. 02-cv-3779 & 4537 (D.N.J.).

[14] *Teva Pharmaceutical Industries Ltd, et. al., v. SmithKline Beecham Corp.*, No. 08-cv-3706 (D.N.J.).

antitrust issues and has taken these cases to trial when necessary. In approving the $110 million

dollar settlement and attorneys' fee award in *In re Cardizem Antitrust Litigation*, Judge Nancy G.

Edmunds stated:

> this represents an excellent settlement for the class and reflects the
> outstanding effort on the part of highly experienced, skilled, and
> hard working Class Counsel.  As Class Counsel's affidavits show,
> their efforts were not only successful, but were highly organized
> and efficient in addressing numerous complex issues raised in this
> litigation, including highly technical Federal Drug Administration
> ("FDA") regulatory issues, patent, manufacturing, financial and
> related causation issues.

*In re Cardizem Antitrust Litigation*, MDL Docket No. 1278 (E.D.Mich.) (NGE) (Nov.  26, 2002

Order at 15) (Exhibit R to Gerstein Dec.).

### iv.  *Garwin Gerstein Has The Resources Necessary to Prosecute This Action*

Finally, Garwin Gerstein has the resources necessary to prosecute this action and will

devote those resources to the prosecution of this action in the best interest of the class. *See*

Gerstein Dec. at ¶ 32. Accordingly, Garwin Gerstein best satisfies all of the requirements of

Federal Rule of Civil Procedure 23(g)(1)(C)(i) and the motion requesting their appointment

should be granted.

### D.  *Meijer's Counsels' Application for Lead Counsel Should Be Denied*

Meijer is not itself a direct purchaser but proceeds only by virtue of an assignment. G&E

has not demonstrated that it, or any of its co-counsel, have a similar close relationship with actual

class members to that of Garwin Gerstein and its co-counsel. And based on the materials

submitted in support of their application, Meijer's proposed co-lead counsel, Carella Byrne has

never conducted an action on behalf of pharmaceutical wholesalers, and therefore has no similar

close relationships with the members of the proposed class, nor the expertise of Garwin Gerstein

in this type of highly specialized and complex litigation.

Moreover, Meijer and its lawyer, Ms. Nussbaum of G&E, have on occasion taken actions that raise questions about their resolve and their unwavering commitment to the entities that will constitute this class. For example, Meijer, through Ms. Nussbaum, prematurely withdrew as a plaintiff three times. In two of the cases, Ms. Nussbaum, and her firm continued in the case, having been earlier appointed as co-lead counsel on the basis of their then legal representation of Meijer. *Compare*, Exhibit S to Gerstein Dec., Case Management Order No. 1 (Regarding Certain Structural Matters) at p. 9, *In re Relafen Antitrust Litigation*, No. 01-cv-12239, (D. Mass.) D.E. 47, *with* Exhibit J to Gerstein Dec.; *compare* Exhibit M to Gerstein Dec., Order Certifying Class in Light of Settlement, Preliminarily Approving Proposed Settlement, Authorizing Notice to The Class and Setting Hearing, *In re Remeron Antitrust Litigation*, 03-cv-00085, (D.N.J), D.E. 181, *with* Exhibit K to Gerstein Dec. And although G&E touts *In re Lorazepam & Clorazepate Antitrust Litigation*, MDL Docket No. 1290 (D.D.C.) as a resounding success, *see* Meijer Motion at p. 9, the result of that case demonstrates that the interests of expediency in seeking to effect a settlement.

In *In re Lorazepam & Clorazepate Antitrust Litigation*, plaintiffs' counsel agreed to a settlement on behalf of both the immediate direct purchasers (like the wholesalers here) and contract purchasers that purchased through the wholesalers. However, the settlement agreement blurred the distinction between the competing claims of the immediate direct purchasers (like wholesalers here), and their downstream customers (the contract purchasers) as to which group of entities actually owned the antitrust claim. Moreover, the settlement allocation plan contained a specific offset reducing the recovery of the wholesalers to the full extent that they sold product to the contract purchasers. *See In re Lorazepam & Clorazepate Antitrust Litigation*, MDL Docket No. 1290, 2003 U.S. Dist. LEXIS 12344 at 21, (D.D.C. June 16, 2003). Thus the claims

of the wholesalers were in direct conflict with the claims of the contract customers. Instead of representing a discrete group of plaintiffs (such as the immediate direct purchasers) and maximizing that group's recovery, the plaintiffs' attorneys in *In re Lorazepam & Clorazepate Antitrust Litigation* settled for all claimants regardless of whether they were direct purchasers, to the detriment of the wholesalers (who were forced to share the recovery with contract customers, thus expanding the class from a likely membership at most in the low hundreds, to up to 55,000 members). The effect of the *In re Lorazepam & Clorazepate Antitrust Litigation* settlement was to reduce the recovery of the pharmaceutical wholesalers (many of whom will be class members here) who sold downstream to contract customers, in order to accommodate competing interests.[15] Garwin Gerstein, has never agreed to a settlement involving disparate interests that would potentially muddy or dilute the interests of the likely class members here, or require a trade-off with other plaintiffs groups, recognizing that its duties are owed solely to the immediate direct purchaser class. Each of the settlements in which Garwin Gerstein, SSR and ODR were counsel were direct purchaser only, independently negotiated agreements that were predicated solely on a careful analysis of risk relative to potential damages recoverable by the discrete class they represent. In each instance, the settlement offers were vetted with significant class members prior to agreeing to present them to courts for approval.

### E. Cohn Lifland Is Ideally Suited to Be Liaison Counsel.

Cohn Lifland has a wide ranging litigation practice at both the trial and appellate levels of the federal and New Jersey state court systems, having successfully litigated cases up through and including the United States Supreme Court.  Cohn Lifland regularly handles complex and

---

[15] The standing of similar contract customers as direct purchasers has been rejected by the courts. *See Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 89 (3d Cir. 2011); *Delaware Valley Surgical Supply Inc. v. Johnson & Johnson*, 523 F.3d 1116, 1124-1125 (9th Cir. 2008).

sophisticated commercial litigation, including class and derivative litigation, in the areas of corporate and securities fraud, lender and accounts' liability, consumer protection, franchise, antitrust, *qui tam*, RICO, employment and intellectual property.

Cohn Lifland has worked – and continues to work - with Garwin Gerstein, SSR and ODR on a number of matters in the District of New Jersey, including *In re Remeron* and *In re K-Dur* cited above and presently also in both *Burlington Drug Co., Inc. v. Pfizer, Inc. et. al.*, 11-cv-6774 PGS-DEA and *Value Drug Company v Pfizer, Inc., et. al.*, 11-cv-6872 PGS-DEA, all Hatch-Waxman cases. Cohn Lifland also has worked with Garwin Gerstein on a number of other complex commercial litigations within and outside of this district. A copy of Cohn Lifland's firm resume is appended to the Gerstein Decl. as Exhibit T to Gerstein Dec..

### F. Consolidation for Pretrial Purposes

LWD and King do not oppose that portion of the Meijer Motion seeking to consolidate these cases for pretrial purposes.

### G. Garwin Gerstein Should Be Sole Lead

G&E and Carella Byrne should not be appointed as class counsel under Fed. R. Civ. P. 23(g), since, under the circumstances here G&E and Carella Byrne should not have elevated decision making authority over Garwin Gerstein and the firms on the LWD and King complaints. Specifically, SSR and ODR's depth of experience in litigating these matters since 1998, their familiarity with members of the class, and the likelihood of the significant litigation efforts that they will undertake in the prosecution of this action all militate against elevating G&E and Carella Byrne above them.

### H. LWD Proposes The Following Schedule Leading up to A Rule 16 Conference

LWD proposes the following schedule leading up to a Rule 16 conference:

| May 1, 2012 | Plaintiffs must file a consolidated class action |

| | complaint. |
|---|---|
| June 1, 2012 | Defendants must file an answer to the consolidated class action complaint. |
| June 11, 2012 | The parties must confer regarding a Rule 26(f) report. |
| July 2, 2012 | The parties must submit a Rule 26(f) report including a proposed discovery plan and the scheduling of the remainder of pretrial matters. |
| On or after July 9, 2012, subject to the Court's availability | Rule 16 conferences. |

### III.    CONCLUSION

In light of the foregoing and attachments hereto, Plaintiffs LWD and King ask the Court to enter Proposed Case Management Order No. 1.

Dated: April 9, 2012

Respectfully Submitted,

By: /s/Peter S. Pearlman
Peter S. Pearlman
Cohn Lifland Pearlman
Herrmann & Knopf LLP
Park 80 Plaza West-One
250 Pehle Avenue, Suite 401
Saddle Brook, NJ 07663
(201)845-9600
psp@njlawfirm.com

Bruce E. Gerstein
Garwin Gerstein & Fisher, LLP
1501 Broadway, Suite 1416
New York, NY 10036
(212) 398-0055
bgerstein@garwingerstein.com

Stuart E. Des Roches
Odom & Des Roches, LLP
Andrew W. Kelly
650 Poydras Street
Suite 2020
New Orleans, LA 70130
(504) 522-0077
stuart@odrlaw.com

David P. Smith
David C. Raphael, Jr.
Erin R. Leger
SSR & Raphael, LLP
3600 Jackson St., Suite 111
Alexandria, LA 71303
(318) 445-4480
draphael@ssrllp.com
eleger@ssrllp.com

Heim, Payne & Chorush, L.L.P.
Russ Chorush
600 Travis, Suite 6710
Houston, Texas 77002
Tel: (713) 221-2000
Fax: (713) 221-2021

*Attorneys for Louisiana Wholesale Drug
Cooperative Inc., and King Drug Company
of Florence, Inc.*