NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| IN RE LAMICTAL DIRECT PURCHASER ANTITRUST LITIGATION | : : : : **OPINION** : : Civ. No. 12-995 (WHW) : : |
| THIS DOCUMENT RELATES TO: ALL DIRECT PURCHASER ACTIONS | |

**Walls, Senior District Judge**

Defendants move to stay all proceedings because a recent Third Circuit decision, *In re K-Dur Antitrust Litigation*, 686 F.3d 197 (3d Cir. 2012) ("*K-Dur*"), is pending before the Supreme Court on petitions for a writ of certiorari. They argue that if certiorari is granted, the outcome will directly affect the legal standard that will be applied in this case. Defendants' motion is denied.

**FACTUAL AND PROCEDURAL BACKGROUND**

GlaxoSmithKline LLC ("GSK") holds the patent for pharmaceutical lamotrigine, which GSK markets under the brand Lamictal®. Am. Compl. ¶ 11; Def. Br. at 3. This drug treats medical conditions such as epilepsy, bipolar disorder, other disorders involving seizures, and has several off-label uses.  Teva is a generic pharmaceutical company that wanted to market its own generic version of Lamictal and filed Abbreviated New Drug Applications with the FDA seeking approval to do so. Am. Compl. ¶ 11. In 2002, GSK sued Teva for patent infringement of its lamotrigine patent in a process contemplated by the Hatch-Waxman Act, 21 U.S.C. § 355. *Id.* ¶

1

**NOT FOR PUBLICATION**

13. After three years of litigation, the parties settled in 2005. *Id.* ¶ 18. Plaintiffs allege that the terms of that settlement between GSK and Teva violate federal antitrust statutes. *Id.* ¶¶ 108-150.

In *In re K-Dur Antitrust Litigation*, 686 F.3d 197 (3d Cir. 2012), the Third Circuit recently examined a settlement between a generic drug manufacturer and a patent holder that was reached under similar circumstances. At issue was the legality of "reverse payment agreements," where a patent holder pays the generic manufacturer to drop its patent challenge and refrain from entering the market for a specified period of time. *Id.* at 204. The Third Circuit held that district courts should review such agreements by "apply[ing] a quick look rule of reason analysis based on the economic realities of the reverse payment settlement." *Id.* at 218. Any payment from a patent holder to a generic patent challenger who agrees to delay entry into the market should be treated as *prima facie* evidence of an unreasonable restraint of trade. *Id.* This can be rebutted by showing that the payment: (1) was for a purpose other than delayed entry; or (2) offers some pro-competitive benefit. *Id.* The Third Circuit's holding diverges from the approach taken by the Eleventh Circuit, the Second Circuit, and the Federal Circuit, who have all adopted a scope of the patent test when reviewing such settlements. *Id.* at 209-18. Appellants in *K-Dur* have filed petitions for a writ of certiorari with the Supreme Court. Ex. C, Def. Br. to Stay Litigation (ECF No. 81-2). Defendants now move to stay the proceedings in this case until the Supreme Court decides *K-Dur*.

## STANDARD OF REVIEW

A district court has broad discretion to stay proceedings. *Bechtel Corp. v. Laborers' Int'l Union*, 544 F.2d 1207, 1215 (3d Cir. 1976). "The power to stay is incidental to the power inherent in every court to dispose of cases so as to promote their fair and efficient adjudication." *United States v. Breyer*, 41 F.3d 884, 893 (3d Cir. 1994) (citing *Gold v. Johns-Manville Sales*

2

**NOT FOR PUBLICATION**

*Corp.*, 723 F.2d 1068, 1077 (3d Cir. 1983)). Determining whether to stay an action requires the court to consider whether the actions: (1) involve the same parties; (2) involve the same issues; or (3) are pending in the same court. *Ford Motor Credi8t Co. v. Chiorazzo*, 529 F. Supp. 535, 541-42 (D.N.J. 2008). Additionally, the court should consider whether a stay would prejudice the plaintiff and if it would further the interest of judicial economy. *Id.* at 542.

## DISCUSSION

Applying those factors to this case does not yield the conclusion that this case should be stayed. While some of the plaintiffs in this action are also involved in *K-Dur*, at issue in *K-Dur* was a different settlement involving another drug and other pharmaceutical companies. The legal issue is similar, but the possibility that the Supreme Court will grant certiorari and alter the legal framework set forth by the Third Circuit is remote at this juncture. The Supreme Court receives approximately 10,000 petitions for certiorari each year and hears only about 75-80 cases.[1] *See Moeller v. Bradford County*, No. 5-334, 2007 WL 431889, at * 2 (M.D. Pa. Feb. 5, 2007) (denying stay where Supreme Court has yet to grant certiorari in one case). As Plaintiffs point out, the Circuit Courts of Appeal have been split on this issue for over a decade. Over that period of time, the Supreme Court has denied certiorari on the issue at least seven times. Pl. Opp. Br. at 2-3 (ECF No. 90). The Defendants' estimate that the Supreme Court will grant certiorari and issue a decision by June of 2013 is wildly optimistic. Def. Br. at 10 (ECF No. 81-1). Given that this case is in its initial stages, judicial economy would be best served if the proceedings move forward. If the Supreme Court does grant certiorari, the Court will entertain any resulting motion.

## CONCLUSION

---

[1] *Frequently Asked Questions*—Supreme Court of the United States, http://www.supremecourt.gov/faq.aspx#faqgi9

**NOT FOR PUBLICATION**

Defendants' motion to stay all proceedings pending the Supreme Court's decision in *K-Dur* is denied without prejudice.

October 23, 2012

**s/ William H. Walls**

United States Senior District Judge
