UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re: LAMICTAL ANTITRUST LITIGATION<br><br>This Document Relates to:<br><br>ALL ACTIONS | Master File Nos. 12-995 (WHW-CLW); 12-5120 (WHW-CLW) |

## PROTOCOL FOR DISCOVERY OF
## ELECTRONICALLY STORED INFORMATION ("ESI")

IT IS HEREBY STIPULATED AND AGREED, by and among the Plaintiffs Louisiana Wholesale Drug Co., Inc., King Drug Company of Florence, Inc., and Rochester Drug Co-Operative, Inc. (collectively, the "Direct Purchaser Plaintiffs"), Plaintiffs Carolyn McAnaney, International Brotherhood of Electrical Workers Local 38, Health and Welfare Fund, and the International Brotherhood of Electrical Workers Local 595, Health and Welfare Fund (collectively the "Indirect Purchaser Plaintiffs"), Defendant GlaxoSmithKline LLC ("GSK"), and Defendants Teva Pharmaceuticals USA, Inc., and Teva Pharmaceutical Industries Ltd. (collectively, "Teva") (collectively, the "Parties"), through their counsel, that this Electronically Stored Information and Discovery Protocol (the "Protocol") will govern the handling of electronically stored information ("ESI") produced by any party or other person from whom such material may be sought (the "Producing Party") and requested by or received by any party or other person (the "Requesting Party") in connection with the proceedings in the matters *In re: Lamictal Direct Purchaser Antitrust Litigation*, Master File No. 12-995-WHW-MCA (D.N.J.), *In re Lamictal Indirect Purchaser Antitrust Consumer Litigation*, Master File No. 2:12-cv-05120 (D.N.J.), and any other matters subsequently consolidated with these cases (the "Litigation").

**A.   Purpose of the Protocol**

1. The procedures set forth in this Protocol shall govern the production of ESI in the Litigation, unless the parties agree in writing to change them or they are changed by order of the Court. This Protocol is intended by the Parties to give effect to the command of Federal Rule of Civil Procedure 1 "to secure the just, speed and inexpensive determination of every action and proceeding." Its purpose is to reduce litigation costs and expedite the litigation without harming any Party's position on the underlying merits.

**B.   Objections Preserved**

1. This Protocol is intended to govern identification and production of ESI. It is not otherwise intended to alter the Parties' respective rights and obligations under applicable law. Nothing in this Agreement is intended to interfere with, preclude, alter or otherwise affect the Parties'

        independent obligations to engage in and produce noncumulative discovery that is not electronically stored.

    2. Nothing in this Protocol shall prevent any Party from withholding from production any document for privilege or any other permissible reason.

**C. Document/Data Collection and Culling**

    1. Within fourteen (14) days after the Agreement is executed by the Parties (the "Initial Exchange Date") each Party shall provide a list of key custodians and resources (individual, departmental and/or shared resources) most likely to possess relevant discoverable ESI, along with the title of each such custodian or resource (the "Custodian List").

    2. By the Initial Exchange Date each Producing Party will provide the Requesting Party any reasonably accessible existing organizational charts for relevant time periods relating to departments within its organization in which (a) any of the individual custodians referred to in Section C.1 of this Protocol work, or (b) which are proposed as a departmental custodian. Additionally, each party will provide organizational charts, to the extent they are reasonably accessible and exist in the normal course of business, illustrating the identified departments' role in the party's larger organization. Thereafter the Parties will meet and confer to agree as to the individual custodians and departmental and/or shared resources.

        The Parties agree to follow Federal Rule of Civil Procedure 26(b)(2)(B), which provides: "A party need not provide discovery of electronically stored information from sources that the party identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the party from whom discovery is sought must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery."

    3. Each Party's collection and production of ESI will be limited to electronic documents from custodians on the Custodian List (as amended by the meet and confer process described below). Collection of documents from custodians on the Custodian List and any associated production will be subject to and limited by the laws of any jurisdiction in which ESI custodians or the documents and/or data are located.

    4. The Parties agree that search terms and/or search strings are a reasonable and cost-effective way to cull ESI to a more manageable volume and otherwise further the goals of Federal Rules of Civil Procedure 1 and 26(b).

5. By the Initial Exchange Date, the Requesting Party shall provide the Producing Party with search terms and/or search strings that the Requesting Party would like the Producing Party to run on documents in the possession of custodians on the Custodian List. To the extent that either party objects to the use of any search terms and/or search strings, the parties shall meet and confer.

6. A Producing Party may test the efficacy of proposed search terms by assessing hit reports and/or by sampling individual query results or cumulative results, and during the meet and confer process may support the exclusion of disputed search terms by reference to such statistical hit reporting and/or intelligence garnered from such sampling, provided, however, that if a Producing Party relies upon such statistical hit reporting and/or intelligence for the exclusion of certain search terms it must first provide to the Requesting Party the underlying "hit rate data" (i.e., total number of documents searched, number of aggregate hits, number of unique hits, etc.) relating to such search terms.

7. At the conclusion of this initial meet and confer process regarding the Custodian List and search terms and/or search strings, the Parties shall create (a) from the list of search terms and/or search strings provided by the Requesting Party pursuant to Section C.5 of this Protocol, lists of agreed terms and/or strings and disputed terms and/or strings; and (b) from the Custodian List provided by the Producing Party pursuant to Section C.1 of this Protocol as amended by the initial meet and confer process, lists of agreed custodians and disputed custodians. If the Producing Party continues to object fourteen (14) days after the Parties meet and confer over any disputed terms and/or custodians for the Custodian List, the Parties shall submit those terms and/or custodians to the Court in the form of a joint discovery letter. The parties each reserve the right to move the Court pursuant to the Court's order on order on Discovery and Motion Practice for further revisions to the lists of Custodians and search terms and/or strings, after satisfying Section C.12.

8. The Parties agree and understand that the documents from custodians and resources on the Custodian List (as amended by the meet and confer process) that contain one or more of the applied search terms and/or search strings will be reviewed by the Producing Party for responsiveness, privilege, and application of other permissible objections.

9. The Parties agree that search terms will not be applied to content that cannot be searched such as handwriting, drawings, and pictures.

10. Notwithstanding any other provisions of this Agreement, to the extent any Party identifies responsive ESI or documents not "hit" by the filters noted above, all such non-privileged documents must be produced, subject to the Parties' objections to discovery requests.

11. As part of the culling process and as a cost-saving measure, the Parties may deduplicate electronic documents and/or data across all custodians. No Party shall identify and/or eliminate duplicates by manual review. Deduplication will be conducted at the family level (meaning the entire family must be a duplicate of another entire family). The Parties will track the custodian information for the identified duplicates and provide that information in an all custodian field as part of the production process. If the Producing Party is de-duplicating within a custodian only, there is no need to create or provide the duplicate custodian field.

12. The Parties agree to meet and confer in good faith concerning requests to use additional search terms and/or requests to add custodians and/or resources to the Custodian List.

**D. Production**

1. Responsive ESI of the following file types shall be produced in Native Format: Microsoft Excel, Microsoft PowerPoint, Microsoft Access, and video/audio files (e.g., .wav, .mp3, .aiff, .wmv, .gif, etc) as well as other documents that cannot be rendered as .TIFF images. All other responsive ESI shall be produced, at the Producing Party's election, in either Native Format or in black-and-white, single page, at least 300 DPI, Group IV* .TIFF images with corresponding extracted full text and affiliated metadata as identified below, provided that all .TIFF costs shall be borne by the Producing Party. Production in Native Format shall contain all metadata contained in or associated with the file to the extent available and technologically possible. To the extent reasonably feasible, all hidden text (e.g., track changes, hidden columns, comments, notes, markups, etc.) will be expanded, extracted, and rendered in the TIFF file. This specifically includes, but is not limited to, the inclusion of any notes or comments contained within any PowerPoint slides/presentations.

2. "Native Format" is defined to mean a document in the same format and from the same application used to create the document originally. ESI produced in Native Format shall be produced with Extracted Text where available and Metadata shall not be removed or scrubbed from the file. For all ESI produced in Native Format, a duplicate of the first page of such document or a production placeholder sheet bearing the legend "Produced in Native File Format Only" must be produced in TIFF format to facilitate database referencing and Bates and confidentiality stamping. The associated Load File shall include a link to the native item.

3. The parties agree that, except for the pleadings, motions, memoranda of law, expert reports, declarations, transcripts of testimony or proceedings, written discovery requests and responses and all other documents produced and/or filed in *SmithKline Beecham v. Teva Pharmaceuticals*, 02-cv-03779-JWB-GDH (D.N.J. 2002) (the "Patent Case"), paper

documents shall be produced as static images: The images will be in black-and-white, single page, 300 DPI, Group IV*TIFF images with corresponding OCR text in document level .TXT format and standard load files, which can be used with commercially available litigation software packages. Hard copy color paper documents will be produced in grayscale in TIFF format. The Parties will accommodate reasonable requests for production of specific images in color to the extent available. Producing such Paper Documents in such form does not change their character from Paper Documents into ESI.

4. ESI that is to be produced in Native Format but requires redactions shall be produced as TIFF images with the relevant portions redacted, or if a TIFF image production is not practicable (e.g., the native file is a video or a large spreadsheet), as a copy of the native file with the redacted portions replaced with "[REDACTED]" or similar mark. Then, the extracted text shall not be delivered, but rather OCR Text will be delivered based on the redacted version.

5. All productions will include these additional specifications:

   - a Load File for images (.dii, .lfp and .opt);
   - delimited Load Files (.dat) containing a field with the full path and filename to files produced and the Metadata fields identified below, where such Metadata is available;
   - document level .txt files for all documents containing extracted full text, or OCR Text if the document has associated OCR text at the time of collection (OCR Text only if extracted text is unavailable or if the document has been redacted); and
   - Bates number branding and Confidentiality designations (if any) on the face of any TIFF images.

6. The Parties agree to produce information with the following metadata fields for the document/data types designated, but only where such information is inherent to the document and/or e-mail to which it relates, and/or is reasonably available to the Producing Party:

| Metadata fields | Document/data type |
| --- | --- |
| Beginning Production Number | All documents |
| Ending Production Number | All documents |
| Number of Attachments | Emails and electronic documents that have attached family members |
| Beginning Attachment Range | Emails and electronic documents that have attached family members |
| Ending Attachment Range | Emails and electronic documents that have attached family members |
| All Custodian(s) | All documents |

| Metadata fields | Document/data type |
|---|---|
| Document Type | Emails and electronic documents |
| Author(s) | Electronic documents |
| Complete file path where document is located | Electronic documents |
| File Name | Electronic documents |
| File Size | Emails and electronic documents |
| MD5 Hash or SHA-1 Hash Value | Emails and electronic documents |
| Date and Time Last Modified | Electronic documents |
| Date and Time Created | Electronic documents |
| Date and Time Last Accessed | Electronic documents |
| Created by | Electronic documents |
| Last Modified By | Electronic documents |
| From | Emails |
| Date and Time Sent | Emails |
| Date and Time Received | Emails |
| Recipients ("To") | Emails |
| Copyees ("CC") | Emails |
| Blind Copyees ("BCC") | Emails |
| Email Subject | Emails |
| Conversation Thread | Emails |
| Title | Electronic documents |
| Document Extension | Electronic documents |
| Native link | Documents produced in native format |
| Redaction - Indicates whether a redaction has been made | All documents |

7. A Producing Party reserves the right to determine whether to produce non-native image files of ESI in color. A Requesting Party may request that specific ESI be produced in color for good cause.

8. The Parties agree to meet and confer regarding the format of production for any databases and/or structured data that a Party agrees or is ordered to produce.

9. The Parties will make reasonable efforts to ensure that all ESI they produce is legible. If a copy is not legible and the Requesting Party requests a legible copy, the Producing Party will exercise best efforts to produce a legible copy within ten (10) days of a request from the Requesting Party or on a schedule mutually agreed upon by the Parties. If no legible copy can be made, the Producing Party will exercise best efforts to produce the original for inspection and copying within ten (10) days of

a request from the Requesting Party, or as mutually agreed upon by the Parties.

10. The Parties will make reasonable efforts to ensure that all ESI they produce is decrypted.

11. The Parties will meet and confer in good faith to facilitate the acquisition of appropriate licenses and technical information to review native files. In the event that ESI is produced in a format that is not reasonably usable by the Requesting Party, upon request, the Producing Party will take reasonable steps to produce such ESI in a reasonably useable format.

12. If any original discoverable document has notes affixed thereto or attachments, the Parties will produce copies of those documents with the accompanying notes and attachments.

13. All compressed or zipped ESI will be unzipped or decompressed to the extent reasonably feasible.

14. The Parties agree to provide an updated "All Custodian" field in the load file along with the last production. This field will contain all custodian information identifying the custodians for the document even though the exact copy may have been de-duped.

15. Producing parties will only redact discoverable documents, ESI, or Metadata within the bounds of this Protocol, applicable law or upon order of the Court. All redactions will be designated by a white box with "REDACTED" in black font or a black box with "REDACTED" in white font.

16. A Producing Party may redact (i) privileged information; (ii) information protected under the work-product doctrine; (iii) confidential personal information protected from disclosure under NIST, HIPAA, or any other applicable federal, state regulation, statute, or guidelines; (iv) in a document that contains some responsive material, confidential business information related to pharmaceutical products other than Lamictal and/or Generic Lamictal, provided that such information is not relevant to any claim and/or defense in this Litigation and that redacting such information does not remove context required to understand the non-redacted portion(s) of the document; and (v) fully non-responsive attachments to responsive parent documents. For such fully non-responsive attachments, a placeholder slip-sheet endorsed "Withheld Non-Responsive" will be produced to capture the family relationship. The parties agree to meet and confer in good faith to attempt to resolve any dispute arising under this provision.

17. To the extent that a responsive document possesses redacted content, the Producing Party may produce that document in a redacted form. Any

redactions shall be clearly indicated on the face of the document and each page of the document from which information is redacted shall bear a designation that it has been redacted. The production of a document in a redacted form does not affect the Producing Party's obligation to properly identify and substantiate the basis for the redaction on a redaction/privilege Log. If the redactions or withholdings were made pursuant to Sections D.16.i or D.16.ii of this Protocol, such redactions will be logged in a manner consistent with Section G of this Protocol. If the redactions or withholdings were made pursuant to another subsection of Section D.16, such redactions will be logged in a manner sufficient to identify the reason such information was redacted.

18. Each page of a produced document that has been imaged as a tiff will have a legible, unique page identifier "Bates number" electronically burned onto the image at a location that does not obliterate, conceal, or interfere with any information from the produced document.

19. The Producing Party may produce documents via a secure file transfer mechanism and/or on readily accessible media (CD-ROM, DVD, external hard drive). Each production will be labeled with the begin/end production numbers, case caption and Producing Party's name. All production media will be encrypted and the corresponding password will be provided to counsel via email.

20. Family Relationships of ESI. Parent-child relationships between ESI (e.g., the association between an attachment and its parent email, or a spreadsheet embedded within a word processing document) must be preserved by assigning sequential Bates numbers to all files within the parent-child group and providing accurate ranges for those files in the attachment ranges provided.

21. The Parties agree to produce discoverable information responsive to requests for production on a rolling basis.

E. **Cost Shifting**

1. Generally, the costs of production of ESI produced pursuant to this Order shall be borne by each Producing Party. If a Producing Party reasonably believes in good faith that producing particular ESI poses an undue burden or cost or is otherwise disproportionate such Party, at or before the time the production is due under the Federal Rules of Civil Procedure, shall describe the nature of the objection with reasonable particularity and indicate whether it is willing to offer an alternative to producing copies of documents or of electronically stored information, or permitting inspection. The Parties shall promptly meet and confer in an attempt to resolve the issues and, if no resolution is reached, seek appropriate relief from the Court. In such case, the Court may apportion the costs of

electronic discovery in accordance with the Federal Rules of Civil Procedure. A Party's nonresponsive or dilatory discovery tactics will be cost-shifting considerations. Likewise, a Party's meaningful compliance with this Order and efforts to promote efficiency and reduce costs will be considered in cost-shifting determinations.

### F. Cost Containment

1. To help contain costs, the Parties agree that there is no need to preserve or collect ESI from the following sources which are deemed to not likely contain relevant information and to be not reasonably accessible:

    i. Voice mails

    ii. random access memory (RAM) or other ephemeral data;

    iii. on-line access ~ata such as temporary internet files, histories, caches, cookies, etc.;

    iv. data in metadata fields that are frequently updated automatically, such as last-opened dates, except as specified in this Order (the metadata fields identified above in D.6.

    v. text and instant messages;

    vi. mobile devices;

    vii. personal computers and personal e-mail not regularly used for business

    viii. activities; and

    ix. social media sites.

### G. Privilege Assertions and Related Privilege Logs

1. The Parties agree to jointly request that the Court enter a 502(d) Order. The terms of any such order are hereby incorporated herein.

2. A claim of privilege or attorney work product for documents or ESI withheld from production or redacted for privilege before production should be asserted and a corresponding privilege log produced within thirty (30) days of each rolling production.

3. A privilege log shall not be required as to the following categories of materials and any applicable privilege or production will be preserved even if such materials are not listed on any Producing Party's log:

i. privileged material dated after February 17, 2012, and (a) created or received by counsel of record or outside attorneys advising in this litigation and their associated attorneys and support staff, including paralegal and secretarial personnel; and/or (b) created or received by in-house counsel advising in this litigation and their associated attorneys and support staff, including paralegal and secretarial personnel;

ii. privileged material dated after June 25, 2002, and created or received by counsel of record or outside attorneys advising in the Patent Case and their associated attorneys and support staff, including paralegal and secretarial personnel, provided such privileged materials does not relate to any of the following topics:

   a. the settlement or potential settlement of the Patent Case, the agreements between Defendants dated February 16, 2005, or any other potential agreement entered into or contemplated by Defendants regarding Lamictal, including but not limited to the negotiation of such agreement and the interpretation of the potential or actual impact and/or effect of such agreements; and/or any potential or actual litigation arising out of any such agreement, including *Teva Pharm. Indus. Ltd. v. Smithkline Beecham Corp. d/b/a Glaxosmithkline*, D.N.J Case No. 08-cv-3706-DMC-MF;

   b. discussion, analysis, or evaluation of the claims or defenses asserted in the Patent Case, including but not limited to the merits of the patent claims; the patent's validity, enforceability, and infringement by Teva; and the potential outcome of the Patent Case; and

   c. entry or potential entry of generic version(s), including an authorized generic version, of Lamictal.

   To avoid any confusion, documents related to the foregoing topics (a-c) must be logged.

iii. correspondence sent exclusively between in-house attorneys acting as counsel and outside counsel, provided that such correspondence does not relate to any of the following topics:

   a. the topics identified in Section G.3.ii.a-c above; and

   b. the antitrust risk associated with agreements referenced in Section G.3.ii.a above.

   To avoid any confusion, documents related to the foregoing topics (a-b) must be logged.

      iv.    privileged material related to activities undertaken in compliance with the duty to preserve information (including but not limited to litigation hold letters) that are protected from disclosure under Federal Rules of Civil Procedure 26(b)(3)(A) and (B).

Notwithstanding the above stipulation, all privileged material should be preserved in the event of a later dispute with respect to the propriety of any privileged claim or the sufficiency of the privilege log. The Parties agree that they will confer at a later time to determine whether any other categories of privileged documents can be excluded from the privilege logging requirement.

4. For purposes of creation of a privilege log, a party need include only one entry on the log to identify withheld email exchanges and attachments. The information in the log shall be of sufficient detail to enable the Receiving Party to assess the validity of the Producing Party's claim for each entry without disclosing the protected information. The privilege log entry will at a minimum contain the following metadata fields where such metadata is available: Beginning Production Number; Ending Production Number; Legacy Bates Number: Beginning Control Number; Ending Control Number; Date and Time Created; Date and Time Last Modified; Date and Time Last Accessed; Date and Time Sent; and Date and Time Received; Author; From, Recipients, Copyees, Blind Copyees; All Custodian(s); and Document Type. The Parties agree to denote attorneys, paralegals, and other legal personnel by placing an asterisk after the name of each such an individual. To the extent providing metadata for the parent document or identifying withheld attachments, if any, would reveal privilege information, such information will be redacted. The log shall be produced in both spreadsheet form (Excel, .xls, .csv or .txt) and PDF form. The parties agree to refer to the PDF form of the privilege log in any correspondence with each other and/or the Court.

## H. Resolution of Disputes

1. The parties agree to meet and confer in good faith regarding matters related to the production of documents and/or data not specifically set forth in this Protocol, related to the interpretation of this Protocol, or related to the parties' obligations hereunder. The parties will make their best efforts to comply with and resolve any differences concerning compliance with this Protocol. If a Producing Party cannot comply with any material aspect of this Protocol, such Producing Party will inform the Requesting Party in writing at or before the time of production as to why compliance with the Protocol is unreasonable or not possible.

2. If the Parties are unable to reach resolution regarding any dispute concerning the interpretation of this Protocol or compliance with same, such disputes may be presented for judicial resolution. No Party may seek

    judicial relief concerning this Protocol unless it first has met and conferred in good faith with the applicable Producing or Requesting Party.

## I. Modification of Protocol

  1. Nothing in this Protocol prohibits a Party from seeking modification of any of its terms either by stipulation or by application to the Court. If any Party subsequently determines that it cannot in good faith proceed as required herein or without undue burden and/or cost, the Parties will meet and confer in good faith to attempt to resolve any dispute before seeking Court intervention.

**IT IS SO ORDERED:**

Dated: ___May 6___, 2016      _____
                        Honorable Cathy L. Waldor
                        United States Magistrate Judge