# LOWENSTEIN
# SANDLER LLP

Gavin J. Rooney
Partner

65 Livingston Avenue
Roseland, NJ 07068
T  973 597 2472
F  973 597 2473
grooney@lowenstein.com

September 26, 2016

VIA ECF

Honorable Cathy L. Waldor, U.S.M.J.
United States District Court for the District of New Jersey
Martin Luther King Building & U.S. Courthouse
50 Walnut Street
Newark, New Jersey 08608

Re:    *In re Lamictal Direct Purchaser Antitrust Litigation*
       **Master File No. 12-cv-995-WHW-CLW**

Dear Judge Waldor:

Pursuant to the Pretrial Scheduling Order governing this case and guidance given by Your Honor during the July 12, 2016 status conference, Defendants write to seek the Court's assistance regarding several discovery-related disputes about which the parties are at an impasse.

## I.      Background

Plaintiffs' complaint alleges that GSK and Teva violated antitrust laws when they settled a patent infringement case in February 2005. That settlement fully resolved pending patent litigation, the outcome of which was highly uncertain. Under the terms of the settlement: (1) Teva received an exclusive license to market generic lamotrigine tablets four to six months before GSK's patent and regulatory exclusivity on tablet sales was set to expire; and (2) Teva was permitted to market generic lamotrigine chewables almost immediately, long before GSK's patent and regulatory exclusivity expired, and before the FDA approved Teva's ANDA to market generic lamotrigine chewables. Plaintiffs contend that the settlement delayed entry of generic lamotrigine tablets, causing Plaintiffs to pay more than they would have absent the settlement.

## II.     Disputes Regarding Requests for Production of Documents

The parties have reached an impasse regarding four issues related to Plaintiffs' Responses and Objections to Defendants' Joint Requests for Production of Documents.

<u>Applicable Date Range.</u>  The parties do not agree on the date range that should apply to Plaintiffs' production. Defendants proposed that all parties search for and produce responsive documents dated from January 1, 2004, the earliest possible date that Defendants believe the parties to the patent case may have engaged in settlement discussions, to July 21, 2009, six

Honorable Cathy L. Waldor, U.S.M.J.                                    September 26, 2016
Page 2

months after mass entry of other generic lamotrigine products, after which point Plaintiffs cannot plausibly claim to have suffered any injury as a result of delayed generic entry.  At Plaintiffs' request and in the spirit of compromise, Defendants have agreed to search for documents going back to January 1, 2002, even though Defendants continue to question the relevance of—and burden associated with producing—documents dated before 2004.  In contrast, Plaintiffs refuse to search for documents that predate February 17, 2008, insisting that they need not produce documents dated before the beginning of their damages period, which begins in 2008 as a result of the applicable statute of limitations.

        Defendants respectfully request that the Court order Plaintiffs to search for and produce documents dated from January 1, 2005, or six months before the date when Plaintiffs contend generic lamotrigine tablets would have been available absent the settlement, whichever is earlier, through July 21, 2009.  Documents in that date range are not only relevant but indeed necessary to resolve the central issue of this case:  the impact that the settlement agreement had on the price of lamotrigine.  The settlement agreement had multiple features, including provisions that made generic lamotrigine chewables available long before they would have been available without the settlement.  Defendants are entitled to discovery that shows the net impact of the settlement agreement, but Plaintiffs have offered discovery regarding only the alleged *negative* impact the settlement had on Plaintiffs during the time they claim entitlement to damages.  *See In re Lipitor Antitrust Litig.*, 46 F. Supp. 3d 523, 548-49 (E.D. Pa. 2014) (evaluating settlement as a whole, and not with a piece-meal approach); *In re Niaspan Antitrust Litig.*, 42 F. Supp. 3d 735, 752 (E.D. Pa. 2014) (same).  And Defendants cannot measure the settlement's impact without a baseline for comparison, which is why documents from the six months that precede the date on which the settlement agreement allegedly began impacting the price of the drug are highly relevant as well.  Defendants believe that the settlement agreement began impacting the price of the chewable form of the drug when, pursuant to the settlement's terms, generic lamotrigine chewables became available in June 2005.  Thus, documents and information dated within six months prior to June 2005 are necessary for the comparison Defendants are entitled to explore.  If Plaintiffs allege that the settlement in fact impacted price before June 2005, that earlier date should mark the end of the six-month baseline period.

        <u>Plaintiffs' Communications with Third Parties Regarding Defendants.</u>  Plaintiffs have refused to search for documents regarding Defendants' drug pricing policies and practices, the availability of generic versions of GSK products and/or generic equivalents marketed by Teva, and Defendants' settlement of patent infringement litigations.  These documents are relevant for at least two reasons.  First, Plaintiffs concede that the price they paid for branded Lamictal and generic lamotrigine during the relevant time period was set by agreements with GSK and Teva that were not drug specific—*i.e.*, agreements that did not mention the drugs by name.  Thus, Plaintiffs likely possess documents that bear on the prices they paid for branded Lamictal and generic lamotrigine, but that on their face relate only to more general drug pricing policies and

Honorable Cathy L. Waldor, U.S.M.J.                         September 26, 2016
Page 3

practices.  Second, Plaintiffs are drug wholesalers, and they have purchased drugs, other than Lamictal that were the subject of patent infringement litigations in which GSK or Teva was a party.  Defendants are entitled to explore Plaintiffs' beliefs about how such litigations—and the settlement of such litigations— generally affected them.  If, for example, Plaintiffs fare better in a world in which a generic equivalent is not yet available, such information is ripe for discovery.

The documents Defendants request are not only relevant, but also proportional to the needs of this case.  Not wishing to require the production of documents already in Defendants' possession or of extensive privileged logs, Defendants carefully limited their request to communications with third parties about the topics outlined above.  While Defendants' request is not likely to burden Plaintiffs, it is likely to result in the production of relevant documents to which Plaintiffs have substantially greater access.  Defendants respectfully request that the Court order Plaintiffs to produce documents that relate to or reflect communications with alleged class members or third parties regarding Defendants and that relate to: (1) drug pricing policies and practices; (2) the availability of generic equivalents; and/or (3) the settlement of patent infringement litigation.

Discovery Regarding Class Certification Filings.  Plaintiffs also refuse to produce documents that relate to class certification and that were filed in other litigations to which any Plaintiff was a party.  Plaintiffs are repeat players in antitrust cases challenging the settlement of patent infringement litigations.  They frequently file motions for class certification and make representations about the pharmaceutical industry therein.  Those representations likely bear on the class issues that will arise in this case, rendering the documents containing those representations relevant.  Those documents are also proportional to the needs of the case because they are not particularly numerous, and yet they are inaccessible to Defendants because they frequently are filed under seal.  Defendants do not wish Plaintiffs to breach any protective orders that may govern other filings and have instead asked Plaintiffs to redact the confidential information of third parties before producing the requested documents.  Defendants respectfully request that the Court order Plaintiffs to produce all documents filed in any other litigation to which any Plaintiff was or is a party that relate to class certification, redacted for any confidential information belonging to a third party and covered by a protective order.

Request for Briefing Schedule Regarding Downstream Discovery.  The final request-related dispute that necessitates Court intervention involves Plaintiffs' refusal to produce information about Plaintiffs' sales of branded Lamictal and generic lamotrigine.  As Defendants indicated during the last conference with the Court, Defendants believe that the scope of this dispute and its legal complexity should be explored in briefs, rather than in letters to the Court, and request an opportunity to discuss a proposed briefing schedule on this issue during the September 28, 2016 telephonic conference.

Honorable Cathy L. Waldor, U.S.M.J.                              September 26, 2016
Page 4

### III.    Disputes Regarding Search Terms

The Protocol for Discovery of Electronically Stored Information (Doc. No. 181) ("ESI Protocol") governs the process for determining the search terms that the parties will use to identify potentially responsive material.  It provides that each requesting party will propose terms or strings for use in searching documents in the possession of the producing parties' key custodians, after which point the parties will engage in a meet and confer process in an attempt to resolve any disputes.

Plaintiffs' initial search term proposal to Defendants included more than 300 search strings.  Guided by the ESI Protocol,  Defendants engaged in a constructive meet and confer process with Plaintiffs spanning several months.  Defendants have agreed to use *all but three* of the search terms or strings that Plaintiffs most recently proposed, meaning that each Defendant will search for approximately 200 terms or strings to locate responsive material.

By contrast, Plaintiffs have completely ignored the process mandated by the ESI Protocol and have steadfastly refused to consider searching their own documents for any terms other than "Lamictal" and "lamotrigine."  Plaintiffs took this position before they even received or reviewed Defendants' initial search term proposal—a reasonable and tailored proposal that included approximately 20 search strings.  Plaintiffs have refused to consider any compromise position, even after Defendants tailored their proposal to just 11 search strings.  Each of those search strings is specific either to the drugs at issue in this case (*e.g.*, other ways that Plaintiffs might describe Lamictal or lamotrigine) or to Defendants' and their relevant conduct.  *See* Exhibit A.  Accordingly, Defendants respectfully request that the Court order Plaintiffs to use the search strings set out in Exhibit A, which will yield documents relevant to the parties' claims and defenses and discovery proportional to the needs of this case.

*             *             *

Defendants look forward to the opportunity to discuss these and any other issues during the September 28, 2016 status conference, and are happy to provide any additional materials that the Court would find helpful for its consideration of the issues presented herein.

Respectfully submitted,
s/ Gavin J. Rooney
Gavin J. Rooney

Attachment


cc:       All Counsel of Record (via ECF)