Not for Publication

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: Lamictal Direct Purchaser Antitrust Litigation | Civil Action No. 12-995 <br><br> **OPINION & ORDER** |

**John Michael Vazquez, U.S.D.J.**

  This antitrust class action involves the allegedly artificially inflated pricing of the brand drug Lamictal, manufactured by Defendant SmithKline Beecham Corporation d/b/a GlaxoSmithKline ("GSK"), and its generic competitor lamotrigine, manufactured by Defendants Teva Pharmaceutical Industries LTD and its subsidiary Teva Pharmaceuticals USA, Inc. (collectively "Teva"). Presently before the Court is a request for leave to file a supplemental expert report submitted by the Direct Purchaser Class Plaintiffs ("Plaintiffs"). D.E. 516. Defendants filed a brief in opposition, D.E. 518, Plaintiffs filed a reply, D.E. 521, and with leave of the court, Defendants filed a sur-reply, D.E. 524. The Court reviewed the parties' submissions[1] and decided the motion without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b). For the reasons set forth below, Plaintiffs' request for leave to file a supplemental expert report is **DENIED**.

  **I. BACKGROUND**

  The complete factual background is described in the Court's April 9, 2021 Opinion denying class certification as to the purchasers of lamotrigine, which is hereby incorporated into this

---

[1] Plaintiffs' brief requesting leave to file a supplemental expert report, D.E. 516 ("Br."); Defendants' brief in opposition, D.E. 518 ("Opp."); Plaintiffs' reply brief, D.E. 521 ("Reply"); and Defendants sur-reply, D.E. 524.

Opinion. In short, GSK and Teva were involved in a patent lawsuit over GSK's brand drug, Lamictal, and Teva's generic version of the drug, lamotrigine. D.E. 55 ("Compl.") ¶ 13. GSK and Teva reached a settlement which involved GSK promising to refrain from launching its own competing authorized generic version of Lamictal (the "No-AG Promise") until Lamictal's patent for lamotrigine expired. D.E. 373-3 at 2; D.E. 373-4 at 16. Plaintiffs in the present action claim that absent the No-AG Promise, Teva's generic drug would have faced pricing competition from GSK's authorized generic drug. Compl. ¶ 28. Thus, Plaintiffs conclude, the lack of competition that resulted from the No-AG Promise forced Plaintiffs to purchase both Lamictal and lamotrigine at artificially inflated prices. *Id*. Defendants argue that Plaintiffs were not harmed because GSK lowered the prices of Lamictal through a contracting strategy, and Teva, upon learning of this contracting strategy, preemptively lowered the price of lamotrigine.

On June 28, 2018, Plaintiffs moved to certify the following class:

> All persons or entities in the United States and its territories who purchased Lamictal Tablets directly from GSK, or who purchased a generic version of lamotrigine tablets directly from Teva, at any time during the Class Period from February 17, 2008 until January 22, 2009.

D.E. 372 at 3. Following briefing on the issue, Judge Walls certified the class. D.E. 428, D.E. 429. Defendants appealed, challenging only the certification of class members who purchased generic lamotrigine from Teva ("Generic-Only Purchasers"). *In re Lamictal Direct Purchaser Antitrust Litig.*, 957 F.3d 184, 190 (3d Cir. 2020). Defendants did not challenge class certification as to the 32 direct purchasers of brand Lamictal. The Third Circuit vacated Judge Walls's decision and remanded with instructions to perform a rigorous analysis in determining whether to certify the class of Generic-Only Purchasers. *Id.* at 195. On remand, the Court found that Plaintiffs had not shown by a preponderance of the evidence that they could prove antitrust injury through

common evidence as to the Generic-Only Purchasers and thus denied class certification of this group.  D.E. 502.

Following the Court's decision, Plaintiffs requested leave to file a supplemental expert report from their expert economist Dr. Russell Lamb in support of a revised, smaller class "that includes at least 40 members: (a) all 32 direct purchasers of brand Lamictal…and (b) at least eight generic-only purchasers – the eight that Defendants have *not* claimed were uninjured."  Br. at 1 (emphasis in original).

## II.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 26(e) imposes a duty to supplement or correct an expert report if a party learns that information included in the report "in some material respect…is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing."  Fed. R. Civ. P. 26(e).  "[S]upplementation is proper only for the narrow purpose of correcting inaccuracies or adding information that was not available at the time of the initial report*."  Ezaki Glico Kabushiki Kaisha v. Lotte Int'l Am. Corp*., No. Civ. A. No. 15-5477, 2019 WL 581544, at *3 (D.N.J. Feb. 13, 2019) (internal quotation omitted).  Courts have interpreted Rule 26(e) to permit supplementation in instances such as when an expert receives newly produced information or discovers numerical errors in her calculations after submitting her expert report.  *See id.*  However, supplementation should not be allowed "to correct failures of omission because the expert did an inadequate or incomplete preparation, add new opinions, or deepen or strengthen existing opinions."  *Id.* (internal quotation omitted).  Rule 26(e) is not intended to benefit the party with the duty to disclose; "[it] does not grant a license to supplement a previously filed expert report because a party *wants* to, but instead imposes an obligation to supplement the report when a party discovers the information

it has disclosed is incomplete or incorrect." *Lockhart v. Willingboro High Sch.*, Civ. No. 14-3701, 2017 WL 11465996, at *3 (D.N.J. May 3, 2017) (internal quotations omitted) (emphasis added).

### III. ANALYSIS

Plaintiffs state that their proposed supplemental expert report would address (1) whether the proposed class satisfies the numerosity requirement of Rule 23(a)(1) due to impracticability of joinder, and (2) whether antitrust injury as to eight of the 32 Generic-Only Purchasers can be proven with predominantly common evidence, which bears on whether the predominance requirement of Rule 23(b)(3) is satisfied. Br. at 2.

#### A. Impracticability of Joinder

Plaintiffs represent that Dr. Lamb's proposed supplemental report would address two factors relevant to the impracticability of joinder analysis: putative class members' ability and motivation to litigate as joined plaintiffs and the geographic dispersion of class members. *Id.* at 3. As to the first factor, Dr. Lamb would calculate individual class members' damages claims and demonstrate that a number of class members have "negative value" claims, for which the cost of bringing an individual action would exceed the potential relief. *Id*. Plaintiffs contend that "Dr. Lamb did not previously conduct this analysis because the original class of 65 members was well above the level at which impracticability of joinder is presumed." *Id*. As to the second factor, Dr. Lamb would provide a revised list of class members showing their locations across the United States to demonstrate the geographic dispersion of the revised proposed class. *Id.* at 4.

The Court finds that supplementation on this basis is improper. Plaintiffs do not claim that Dr. Lamb's initial report was incomplete or incorrect, or that new information has come to light that would compel filing a supplemental expert report. *See Lockhart*, 2017 WL 11465996, at *3 (finding that there was no basis to permit new opinions as supplements under Rule 26(e) where

original report was not incomplete or incorrect, and there was no showing that the expert received new information supporting supplementation). Indeed, Dr. Lamb's initial report already contains the information that Plaintiffs propose, including the geographic dispersion of class members. *See* Br. at 11 n.28, Opp. at 19.[2]

Critically, by Plaintiffs' own admission, Dr. Lamb could have addressed the issue of individual damages in his initial report but chose not to because Plaintiffs presumed that impracticability of joinder would not be an issue with the originally proposed class. *See* Br. at 3. Notably, Plaintiffs chose not to have Dr. Lamb engage in this analysis even though Defendants briefed the impracticability of joinder issue and submitted expert calculations and testimony regarding individual damages in support, *and* Dr. Lamb subsequently relied upon those calculations.[3] *See* Opp. at 15-16. Plaintiffs present no compelling reason as to why Dr. Lamb's individual damages analysis could not have been included in his initial report. *See Scopia Mortg. Corp. v. Greentree Mortg. Co., L.P.*, 184 F.R.D. 526, 530 (D.N.J. 1998) (ruling that supplementation was not permitted where the expert "could have addressed the damages issue just as well in his first report as he could now").

The Court denies the request to supplement as to Dr. Lamb's proposed impracticability analysis.

---

[2] The Court is also skeptical that a list of class members' locations falls within the scope of expert testimony. *See United States v. Gibbs*, 190 F.3d 188, 212 (3d Cir. 1999) (expert testimony is excluded "when that testimony ventures into areas in which the jury needs no aid or illumination").

[3] The Court is not persuaded by Plaintiffs' argument that they should be permitted to submit additional damages calculations because Dr. Lamb disagreed with Defendants' expert's adjustments to Dr. Lamb's data. Dr. Lamb noted his disagreement with these adjustments in his expert opinion reply, *see* Reply at 6 n.10, and Plaintiffs provide no reason why Dr. Lamb could not have included a more fulsome damages analysis at that time. In other words, Dr. Lamb was free to pursue an alternate analysis earlier in these proceedings but did not do so.

### B. Predominance

Plaintiffs also seek to supplement Dr. Lamb's expert report to address whether antitrust injury to the eight Generic-Only Purchasers, who Defendants did not claim were uninjured, can meet the predominance requirement. Br. at 15-20. Plaintiffs contend that analysis by Defendants' own expert showed that three of these purchasers did not pay a reduced price due to GSK's contracting strategy, and one purchaser had a price drop of $0.01 due to the contracting strategy. Br. at 15-16. Plaintiffs continue that Defendants offered no evidence that the prices paid by the four remaining Generic-Only Purchasers were preemptively lowered due to the contracting strategy. *Id.* at 16.

Plaintiffs essentially seek to relitigate the issue of class certification of the Generic-Only Purchasers. The Court previously denied class certification of the Generic-Only Purchasers, including the eight purchasers for which Plaintiffs now seek to offer supplemental expert opinions. D.E. 502, D.E. 503. Plaintiffs cannot relitigate this issue. *See Am. C.L. Union v. Mukasey*, 534 F.3d 181, 187 (3d Cir. 2008) ("Under the law-of-the-case doctrine, when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.") (internal quotation omitted). Plaintiffs did not raise this alternate argument, although it was clearly available to them, at an earlier stage of the proceedings.

Plaintiffs' request to file a supplemental expert report on this basis is also denied.

### IV. CONCLUSION

For the foregoing reasons, and for good cause shown,

IT IS on this 21st day of January 2022 hereby

**ORDERED** that Plaintiffs' request for leave to file a supplemental expert report, D.E. 516, is **DENIED**.

_____
John Michael Vazquez, U.S.D.J.