**Not for Publication**

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re: Lamictal Direct Purchaser Antitrust Litigation | Civil Action No. 12-995 |
| | **OPINION** |

**John Michael Vazquez, U.S.D.J.**

This antitrust class action involves the allegedly artificially inflated pricing of the brand drug Lamictal, manufactured by Defendant SmithKline Beecham Corporation d/b/a GlaxoSmithKline ("GSK"), and its generic competitor lamotrigine, manufactured by Defendants Teva Pharmaceutical Industries LTD and its subsidiary Teva Pharmaceuticals USA, Inc. (collectively "Teva"). Presently before the Court is Direct Purchaser Class Plaintiffs' ("Plaintiffs") motion for class certification. D.E. 543. The Court reviewed the parties' submissions[1] and decided the motion without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b). For the reasons set forth below, Plaintiffs' motion is **DENIED**.

## I.    BACKGROUND

The complete factual background is described in the Court's Opinion denying class certification as to the purchasers of lamotrigine, which is hereby incorporated into this Opinion. *See In re Lamictal Direct Purchaser Antitrust Litig.*, No. 12-995, 2021 WL 2349828 (D.N.J. June

---

[1] Plaintiffs' brief in support of its motion will be referred to as "Plfs. Br." (D.E. 544); Defendants' opposition will be referred to as "Defs. Opp." (D.E. 546); and Plaintiffs' reply will be referred to as "Plfs. Reply" (D.E. 550).

7, 2021) ("*Lamictal III*").[2]  In short, GSK and Teva were involved in a patent lawsuit over GSK's brand drug, Lamictal, and Teva's generic version, lamotrigine.  D.E. 55 ("Compl.") ¶ 13.  GSK and Teva reached a settlement which involved GSK promising to refrain from launching its own competing authorized generic version of Lamictal (the "No-AG Promise") until the Lamictal patent expired.  D.E. 373-3 at 2; D.E. 373-4 at 16.  Plaintiffs in the present action claim that absent the No-AG Promise, Teva's generic drug would have faced pricing competition from GSK's authorized generic drug.  Compl. ¶ 28.  Thus, Plaintiffs assert, the lack of competition that resulted from the No-AG Promise forced Plaintiffs to purchase both Lamictal and lamotrigine at artificially inflated prices.  *Id*.  Defendants argue that Plaintiffs were not harmed because GSK lowered the prices of Lamictal through a contracting strategy, and Teva, upon learning of this contracting strategy, preemptively lowered the price of lamotrigine.

On June 25, 2018, Plaintiffs moved to certify the following class:

> All persons or entities in the United States and its territories who purchased Lamictal Tablets directly from GSK, or who purchased a generic version of lamotrigine tablets directly from Teva, at any time during the Class Period from February 17, 2008 until January 22, 2009.

D.E. 372 at 3.  Defendants argued that it was "wrong to think about the proposed class as one group of 65 members," rather than two separate groups (one of 32 brand purchasers and one of 33 generic purchasers), because of different theories of liability.  D.E. 406 at 28.  Defendants added that because "the theories should be kept separate," "Plaintiffs must prove that each group of purchasers meets the numerosity requirement on its own."  *Id.*  Judge Walls certified the proposed class in its entirety.  *In re Lamictal Indirect Purchaser & Antitrust Consumer Litig.*, No. 12-995,

---

[2] A sealed version of this Opinion was issued on April 9, 2021 (D.E. 502), and an unsealed version was issued on June 7, 2021 (D.E. 517).

2018 WL 6567709 (D.N.J. Dec. 12, 2018) ("*Lamictal I*"), *vacated and remanded sub nom. In re Lamictal Direct Purchaser Antitrust Litig.*, 957 F.3d 184, 191 (3d Cir. 2020) ("*Lamictal II*"). Defendants appealed, challenging only the certification of class members who purchased generic lamotrigine from Teva ("Generic-Only Purchasers"). *Lamictal II*, 957 F.3d 184, 190 (3d Cir. 2020). Defendants did not challenge class certification as to the 32 direct purchasers of brand Lamictal. *Id.* The Third Circuit vacated Judge Walls's decision and remanded with instructions to perform a rigorous analysis in determining whether to certify the class of Generic-Only Purchasers. *Id.* at 195. On remand, the Court found that Plaintiffs had not shown by a preponderance of the evidence that they could prove antitrust injury through common evidence as to the Generic-Only Purchasers and thus denied class certification of this group. *Lamictal III*, 2021 WL 2349828, at *3.

Following the ruling, the parties disputed whether the direct brand purchasers were a sufficient class based on Judge Walls's prior ruling. *See* D.E. 504 at 1; D.E. 506 at 1. The Court found that "it doesn't appear that Judge Walls separately found that the direct purchasers were a sufficient class," because he "didn't make a decision on [numerosity]" other than to say that if predominance was not met, any subclasses would still need to meet the Rule 23 requirements, including numerosity. *See* D.E. 528 at 7-8.[3] Accordingly, the Court allowed the parties to submit additional briefing to address the numerosity issue and whether supplemental expert reports were warranted on this issue. D.E. 528.

On June 4, 2021, Plaintiffs requested leave to file a supplemental expert report in support of smaller class "that includes at least 40 members: (a) all 32 direct purchasers of brand Lamictal

---

[3] *See Lamictal I*, 2018 WL 6567709 at *3 ("If the Court finds that predominance is not met at that stage, it can then entertain subclasses, which would respectively need to meet all of Rule 23's requirements, including numerosity.").

. . . and (b) at least eight Generic-Only Purchasers – the eight that Defendants have *not* claimed were uninjured." D.E. 516 at 1 (emphasis in original). Plaintiffs stated that the proposed report would address "whether (1) the proposed class satisfied the numerosity requirement of Rule 23(a)(1) . . . ; and (2) antitrust injury to the eight generic-only purchasers could be proven with predominantly common evidence, an issue relevant to whether the class satisfies the predominance requirement of Rule 23(b)(3)." D.E. 516 at 2. The Court denied Plaintiffs' request on January 21, 2022, finding no proper basis for supplementation, and noted, with respect to Plaintiffs' predominance request, that "Plaintiffs essentially seek to relitigate the issue of class certification of the Generic-Only Purchasers," despite the Court's "previous[] deni[al] of class certification of the Generic-Only Purchasers, including the eight purchasers for which Plaintiffs now seek to offer supplemental expert opinions." *In re Lamictal Direct Purchaser Antitrust Litig.*, No. 12-995, 2022 WL 190651, at *3-4 (D.N.J. Jan. 21, 2021) ("*Lamictal IV*"). The Court explained that Plaintiffs failed to "raise this alternate argument, although it was clearly available to them, at an earlier stage of the proceedings." *Id.* at *3.

On May 20, 2022, Plaintiffs filed the instant motion to certify the following class:

> All persons or entities in the United States and its territories who purchased Lamictal Tablets directly from GSK at any time during the Class Period from February 17, 2008 until January 22, 2009, and Cigna Healthcare, Express Scripts Pharmacy, Medco Health, Walmart, Omnicare, Immediate Pharmaceuticals Inc., Optum RX, and Prime Therapeutics LLC, each of whom directly purchased generic Lamictal Tablets from Teva during the Class Period from February 17, 2008 until January 22, 2009 at prices that were not reduced in response to GSK's Contracting Strategy (the "Class").

Plfs. Br. at 1.

## II.    CLASS CERTIFICATION STANDARD

Federal Rule of Civil Procedure 23 governs class actions. *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 590 (3d Cir. 2012). "'The class action is an exception to the usual rule that litigation

is conducted by and on behalf of the individual named parties only.'" *In re Modafinil Antitrust Litig.*, 837 F.3d 238, 248 (3d Cir. 2016) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348, (2011)).  Thus, "to justify this exception to the rule, 'every putative class action must satisfy the four requirements of Rule 23(a) and the requirements of either Rule 23(b)(1), (2), or (3)." *Id.* (citing *Marcus*, 687 F.3d at 590)).  Plaintiffs first bear the burden of showing that the proposed class satisfies the Rule 23(a) requirements:

> (1) The class must be "so numerous that joinder of all members is impracticable" (numerosity); (2) there must be "questions of law or fact common to the class" (commonality); (3) "the claims or defenses of representative parties" must be "typical of the claims or defenses of the class" (typicality); and (4) the named plaintiffs must "fairly and adequately protect the interests of the class" (adequacy of representation, or simply adequacy).

*In re Modafinil*, 837 F.3d at 248 (internal quotations and citations omitted).

Plaintiffs must also show that the proposed class satisfies Rule 23(b)(1), (b)(2), or (b)(3). *Marcus*, 687 F.3d at 590.  Here, Plaintiffs argue that the putative class meets the requirements of Rule 23(b)(3), which "requires that (i) common questions of law and fact predominate (predominance), and (ii) the class action is the superior method for adjudication (superiority)." *In re Modafinil*, 837 F.3d at 248 (internal quotation marks and citations omitted).

Pursuant to Rule 23(c)(1)(A), a court "must determine by order whether to certify the action as a class action." Fed. R. Civ. P. 23(c)(1)(A).  The decision to certify a class is left to the discretion of the court. *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 310 (3d Cir. 2008), *as amended* (Jan. 16, 2009).  "The requirements set out in Rule 23 are not mere pleading rules." *Marcus*, 687 F.3d at 591 (citing *Hydrogen Peroxide*, 552 F.3d at 316).  "The party seeking certification bears the burden of establishing each element of Rule 23 by a preponderance of the evidence." *In re Modafinil*, 837 F.3d at 248-49 (citing *Hydrogen Peroxide*, 552 F.3d at 307).

"[A]ctual, not presumed, conformance with Rule 23 requirements is essential," therefore a "party's assurance to the court that it intends or plans to meet the requirements is insufficient." *Marcus*, 687 F.3d at 591 (internal quotation marks and citation omitted); *Hydrogen Peroxide*, 552 F.3d at 318 (citation omitted). "To determine whether there is actual conformance with Rule 23, a district court must conduct a 'rigorous analysis' of the evidence and arguments put forth." *Marcus*, 687 F.3d at 591 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982)). This "rigorous analysis" requires a district court to "resolve all factual or legal disputes relevant to class certification, even if they overlap with the merits—including disputes touching on elements of the cause of action." *Id.* Therefore, a district court "may delve beyond the pleadings to determine whether the requirements for class certification are satisfied." *Hydrogen Peroxide*, 552 F.3d at 320 (citations omitted).

## III.    ANALYSIS

The Court only considers whether Plaintiffs have satisfied their burden as to the numerosity requirement because the predominance requirement, as it pertains to the eight Generic-Only Purchasers was already litigated,[4] and the other requirements do not appear to be in dispute.[5] Rule

---

[4] *See Lamictal III*, 2021 WL 2349828, at *21 ("Plaintiffs have not shown by a preponderance of the evidence that they can prove through common evidence that all of Teva's purchasers would have received additional discounts had GSK also launched an authorized generic."); *see also Lamictal IV*, 2022 WL 190651, at *3 (denying Plaintiffs' request for leave to supplement its expert report to address whether the eight Generic-Only Purchasers can meet the predominance requirement because the Court previously denied class certification of the Generic-Only Purchasers, including the eight purchasers for which plaintiffs sought to offer additional expert opinion, thus "Plaintiffs cannot relitigate this issue."); *cf.* Section III. A. (addressing Plaintiffs' numerosity arguments as to the eight Generic-Only Purchasers)

[5] *See generally* Plfs. Br. (arguing that the Rule 23(a) and Rule 23(b)(3) requirements are satisfied); Defs. Opp. (responding only to the numerosity arguments and the predominance arguments that pertain to the eight Generic-Only Purchasers).

23(a)(1) sets forth the numerosity requirement. *See* Fed. R. Civ. P. 23(a)(1).  However, it is "conspicuously devoid of any numerical minimum required for class certification," stating only that the numerosity requirement is satisfied when "the class is so numerous that joinder of all members is impracticable." *In re Modafinil*, 837 F.3d at 249 (citing Fed. R. Civ. P. 23(a)(1)). "Impracticable does not mean impossible and refers rather to the difficulties of achieving joinder. *Id.* (internal quotation marks and citations omitted).  "This calls for an inherently fact-based analysis that requires a district court judge to 'take into account the context of the particular case,' thereby providing district courts considerable discretion in making numerosity determinations." *Id.* (citation omitted).

"[T]he number of class members is the starting point of [the] numerosity analysis," and while "no minimum number of plaintiffs is required to maintain a suit as a class action," joinder is generally presumed to be impracticable when the potential number of class members exceeds forty. *Id.* at 250 (internal quotation marks and citations omitted).  Where a putative class consists of fewer than forty members, "the inquiry into impracticability should be particularly rigorous." *Id.* at 249.  Indeed, the numerosity requirement is meant to have "real teeth." *Allen v. Ollie's Bargain Outlet, Inc.*, 37 F.4th 890, 896 (3d Cir. 2022) (citing *Mielo v. Steak 'n Shake Operations, Inc.*, 897 F.3d 467, 473-74 (3d Cir. 2018)).  Courts therefore consider the following non-exhaustive list of factors to determine whether joinder is impracticable: "judicial economy, the claimants' ability and motivation to litigate as joined plaintiffs, the financial resources of class members, the geographic dispersion of class members, the ability to identify future claimants, and whether the claims are for injunctive relief or for damages." *In re Modafinil*, 837 F.3d at 253. "While all factors are relevant . . . both judicial economy and the ability to litigate as joined parties are of primary importance" because they advance the "core purposes" of a class action and thus cannot

be outweighed by the other factors. *Id.* The Court first addresses the parties' arguments as to the size of the class before considering the impracticability factors.

### A. Size of Class

Plaintiffs ask the Court to certify a proposed class of thirty-two direct purchasers of the brand Lamictal[6] as well as the "8 generic-only purchasers that Defendants have not claimed were uninjured," resulting in a class size of forty. Plfs. Br. at 1. In the alternative, Plaintiffs move to certify a class of the thirty-two direct brand purchasers, defined as follows:

> All persons or entities in the United States and its territories who purchased Lamictal Tablets directly from GSK at any time during the Class Period from February 17, 2008 until January 22, 2009 (the "Class").

Plfs. Br. at 3 n.8.

To briefly recap, Plaintiffs initially moved to certify a class of both brand and generic purchasers. *Lamictal I*, 2018 WL 6567709, at *3. Defendants argued that that the proposed class was actually "two separate subclasses masquerading as one" to avoid numerosity issues. *Id.* at *3; *see* D.E. 406 at 1-3, 27-28. Judge Walls certified the proposed class in its entirety, while noting that if the predominance requirement was not met, each subclass would respectively need to meet

---

[6] Plaintiffs frame the motion as a request to "reconfirm" Judge Walls's certification of the class of thirty-two direct brand purchasers and argue that Defendants waived any challenge to Judge Walls's certification of this class. Plfs. Br. at 1-2, 8-10. Defendants disagree, Defs. Opp. at 26, as does the Court. When Judge Walls found that the proposed 65-member class was sufficiently numerous, Judge Walls stated that if the Court were to "find[] that predominance is not met"—as this Court did on remand—it would then "entertain subclasses, which would respectively need to meet all of Rule 23's requirements, including numerosity." *Lamictal I*, No. 12-995, 2018 WL 6567709, at *3. As noted above, the Court addressed this with the parties and then permitted "additional briefing on numerosity as to the class as it currently stands." D.E. 528. Because Judge Walls did not separately certify the class of direct brand purchasers, Plaintiffs' waiver argument falls short, as does Plaintiffs' position that the proposed class was already certified. Moreover, even if Judge Walls had certified this class, the "court has an independent obligation to determine whether [an] action can be maintained on a class basis." *Caputo v. Fauver*, 800 F. Supp. 168, 169 (D.N.J. 1992), *aff'd*, 995 F.2d 216 (3d Cir. 1993) (citations omitted).

all of Rule 23's requirements, including numerosity." *Lamictal I*, 2018 WL 6567709, at *3, 8. Defendants then petitioned the Third Circuit for review of the District Court's predominance finding as to the Generic-Only Purchasers. *Lamictal II*, 957 F.3d at 187-88. On appeal, Defendants argued that the District Court erred in its predominance analysis, and that absent such error, the class would not have been certified because "abandoning the generic-generic injury theory would leave the class far too small to satisfy Rule 23(a)(1)'s numerosity requirement."[7] Brief for Defendants-Appellants, *In re Lamictal Direct Purchaser Antitrust Litigation*, 2019 WL 2271643, at *51. The Third Circuit vacated Judge Walls's decision and remanded with instructions to perform a rigorous analysis in determining whether to certify the class of Generic-Only Purchasers. *Lamictal II*, 957 F.3d at 195.

Accordingly, Plaintiffs were on notice that a failure to meet the predominance requirement on remand could result in numerosity issues. But Plaintiffs did not address the issue on remand. Plaintiffs instead argued only that the Generic-Only Purchasers satisfied the predominance requirement. *See generally* D.E. 478. And the Court found that Plaintiffs had not shown by a preponderance of the evidence that they could prove antitrust injury through common evidence as to the Generic-Only Purchasers and thus denied class certification of this group. *Lamictal III*, 2021 WL 2349828, at *3.

Plaintiffs now attempt to relitigate this issue by raising an alternate argument that they failed to raise on remand: that a subset of the Generic-Only Purchasers—*i.e.*, the 8 Generic-Only Purchasers that Defendants purportedly have not claimed were uninjured—could independently

---

[7] *See also* Brief for Defendants-Appellants, *In re Lamictal Direct Purchaser Antitrust Litigation*, 2019 WL 2271643, at *20 ("Absent these errors, the Court would have no choice but to find that common issues do not predominate or that, without the generic-only purchasers, the class is too small to satisfy Rule 23(a)'s numerosity requirement.").

satisfy the predominance requirement and thus should be included in the proposed class. *See* Plfs. Br. at 22-32. This argument appears to be based on the faulty premise that "[t]his Court—and the Third Circuit —previously ruled that common issues did not predominate as to class-wide impact only because Plaintiffs' common evidence could not show injury to the 25 generic-only purchasers [that] Defendants claimed were uninjured." Plfs. Reply at 1 (citing *Lamictal II*, 957 F.3d at 193-94; *Lamictal III*, 2021 WL 2349828, at *20). In support, Plaintiffs rely on Defendants' expert's finding that "25 of the 33 generic-only purchasers likely paid the same or lower prices in the actual world under the Contracting Strategy than they would have paid had GSK launched an AG," and the sections of *Lamictal II* and *Lamictal III* that acknowledge this finding. *See* Plfs. Reply at 1 n. 1 (citing *Lamictal II*, 957 F.3d at 193-94; *Lamictal III*, 2021 WL 2349828, at *20). But Defendants never conceded that these eight purchasers were uninjured.[8] And, as explained below, both the Circuit and the Court merely referenced this finding to underscore concerns as to Plaintiffs' ability to show by a preponderance of the evidence that its expert's use of averages could prove that each Generic-Only Purchaser would have received additional discounts but-for the No-AG Promise.

---

[8] Dr. Hughes's conclusion—that up to 25 of 33 generic-only purchasers may not have been injured due to GSK's No-AG Promise—does not equate to a concession on the part of Defendants that the other eight generic-only purchasers were injured. As Plaintiffs themselves recognize, Dr. Hughes was unable to determine whether four of the Generic-Only Purchasers—Omnicare, Immediate Pharmaceuticals Inc., Optum RX, and Prime Therapeutics, LLC—were injured because they did not appear on the Teva spreadsheet on which Dr. Hughes's analysis was based. Plfs. Br. at 34 n. 87 (quoting D.E. 478-3 at 28-29 n.67, Ex. 4a nn. 4-5, Ex. 4b nn. 5-6). And Defendants argue that other evidence shows that at least one of these four purchasers (Omnicare) was uninjured. Defs. Opp. at 29 n.11 (citing D.E. 518 at Ex. 1, Ex. 5 & n.7). As to the other four purchasers—Cigna Healthcare, Express Scripts Pharmacy, Medco Health, and Walmart—the Hughes Report reflects that three of them had a 0.0% price change due to the No-AG Promise and that one of them had a price drop of $0.1 due to the No-AG Promise. But Defendants contend that the prices for these purchasers were so low to begin with (i.e., when Teva faced no competition) that they were unlikely to decrease further even if Teva faced competition from another generic. Defs. Opp. at 30 n. 12. In short, neither Defendants nor their expert ever conceded that the 8 Generic-Only Purchasers had shown antitrust injury.

Plaintiffs claim that Defendants "only argu[ed] on appeal [] that up to 25 of 33 generic-only purchasers may not have been injured due to GSK's 'Contracting Strategy,' and that Plaintiffs could not prove with common evidence that these 25 generic-only class members were injured." Plfs. Br. at 6. This argument mischaracterizes Defendants' argument[9] and the scope of the appeal. As noted by the Third Circuit, Defendants challenged "certification as to the members who purchased generic lamotrigine from Teva." *Lamictal II*, 957 F.3d at 190. There is no indication that Defendants' challenge, nor the Circuit's decision, was cabined to twenty-five of the thirty-three Generic-Only Purchasers, rather than the entire class. In support, Plaintiffs cite to the section of *Lamictal II* that concludes, based on the conflicting expert opinions, that an individual analysis is required to determine the amount that each purchaser would have paid absent the settlement because Teva did not respond to the Contracting Strategy uniformly. *See* Plfs. Reply at 1 n. 1 (citing *Lamictal II*, 957 F.3d at 193-94). While this section acknowledges that Defendants' expert found that "25 of the 33 generic-only purchasers likely paid the same or lower prices in the actual world under the Contracting Strategy than they would have paid had GSK launched an AG," this finding merely factored into the Third Circuit's ultimate ruling. *Lamictal II*, 957 F.3d at 193-94. The Circuit found that it was an abuse of discretion to assume, absent a rigorous analysis, that averages are acceptable, because the dueling expert reports indicated that the acceptability of averages depended on the answers to several factual predicates. *Id.* at 194. The finding does not support the proposition that Defendants' challenge, nor the Third Circuit's ruling, were confined to the twenty-five Generic-Only Purchasers. Moreover, the Third Circuit's references to "each" class member and "all" class members further reflects that the challenge applied to certification of *all* members of the generic purchaser class. *See, e.g.*, *id.* at 192 (indicating that the plaintiffs are

---

[9] *See infra* n. 8.

required "to prove by a preponderance of the evidence that they could establish, through common proof at trial, facts supporting . . . [that] *all* class members would have paid less for [the generic]" but-for the reverse-settlement agreement, and that "[i]f *each* individual class member could rely on this same proof to prove the elements of its claim then the injury is capable of common proof at trial.") (emphases added).

Plaintiffs next argue that on remand, Defendants "argu[ed] that up to 25 of the 33 generic-only purchasers allegedly were uninjured due to GSK's Contracting Strategy," and that the Court "did not rule on whether the 8 generic-only class members who Defendants did not claim were uninjured could be included in the class." Plfs. Br. at 7. Plaintiffs add that the Court only "ruled that common issues did not predominate . . . because Plaintiffs' common evidence could not show injury to the 25 generic-only purchasers that Defendants claimed were uninjured." Plfs. Reply at 1 (citing *Lamictal III*, 2021 WL 2349828, at *20). This again is a mischaracterization. And in support, Plaintiffs similarly cite to the section of *Lamictal III* that references Defendants' expert's finding in the context of acknowledging the Circuit's concern that this finding, among others, undermined Plaintiffs' expert's use of averages.[10] The Court's acknowledgement of this finding does not reflect that Defendants' argument, or the Court's ruling, were confined to the twenty-five Generic-Only Purchasers.[11] The question before the Court on remand was "whether Plaintiffs

---

[10] *See Lamictal III*, 2021 WL 2349828, at *20 (citing *Lamictal IV*, 957 F.3d at 194 ("[A] key concern of the Third Circuit was the Court's analysis of the competing experts vis-à-vis the use of averages. The Circuit noted, among other things, that Defendants' expert, Dr. Hughes, criticized Plaintiffs' expert's, Dr. Lamb, use of general forecasting documents rather than lamotrigine-specific prices and indicated that Hughes developed his own model based on lamotrigine-specific prices from Teva documents that demonstrated that '25 of the 33 generic-only purchasers likely paid the same or lower prices in the actual world under the Contracting Strategy than they would have paid had GSK launched an AG.'")).

[11] In support, Plaintiffs also cite to the Court's statement that "those Teva customers whose lamotrigine prices were not reduced in response to the Contracting Strategy could prove through

have shown that they can prove such harm to *all* [generic] class members through common evidence." *Lamictal III*, 2021 WL 2349828, at *6 (emphasis added). And after a "rigorous analysis," the Court found that Plaintiffs did not carry this burden and denied certification of the generic purchaser class because "Plaintiffs have not shown by a preponderance of the evidence that they can prove through common evidence that *all* of Teva's purchasers would have received additional discounts had GSK also launched an authorized generic." *Id.* at *21 (emphasis added).[12]

Any purported confusion as to the scope of this ruling—and the weight that the references to Defendants' expert's findings carried—should have been clarified by the Court's most recent opinion denying Plaintiffs leave to file a supplemental expert report. *See Lamictal IV*, 2022 WL 190651, at *3-4. The Court took issue with Plaintiffs' request to file a supplemental expert report addressing predominance with respect to eight of the thirty-two Generic-Only Purchasers because it appeared to be an attempt to "relitigate the issue of class certification of the Generic-Only Purchasers." *Id.* at *3. The Court explained that it "previously denied class certification of the Generic-Only Purchasers, including the eight purchasers for which Plaintiffs now seek to offer supplemental expert opinions," and stated that "Plaintiffs cannot relitigate this issue." *Id.* (citing *Am. C.L. Union v. Mukasey*, 534 F.3d 181, 187 (3d Cir. 2008)). The Court added that Plaintiffs failed to "raise this alternate argument, although it was clearly available to them, at an earlier stage

---

common evidence that they suffered antitrust injury." Plfs. Br. at 7-8 (citing *Lamictal III*, 2021 WL 2349828, at *17). But this was a mere observation made by the Court—that such purchasers could show injury through common evidence. However, the Court never made the next critical finding, that is, that Plaintiffs had actually shown that such customers existed.

[12] The Court noted that Plaintiffs could not satisfy their burden because, in part, of their failure to obtain key fact discovery regarding Teva's preemptive price reductions. *See Lamictal III*, 2021 WL 2349828, at *7 ("From the best that the Court can discern, it appears that part of the difficulty" in determining whether Teva preemptively lowered its generic prices in response to the No-AG Promise "may be attributed to Plaintiffs' not obtaining fact discovery on this issue," despite knowing about the AG-Strategy and Teva's awareness of this strategy).

of the proceedings." *Id.* at *3.  The Court reiterates, once again, that Plaintiffs cannot relitigate this issue because class certification for the Generic-Only Purchasers, including the eight purchasers for which Plaintiffs now seek to include in the proposed class, was previously denied. As such, the Court only considers whether the proposed class of direct brand purchasers satisfies the numerosity requirement.

The Court next turns to Defendants' arguments as to class size.  Defendants ask the Court to find that the proposed class of direct brand purchasers has twenty-seven members, rather than thirty-two members, because five of the brand purchasers lack standing as indirect purchasers, and thus "cannot be counted for purposes of impracticability of joinder." *See* Defs. Opp. at 12-13.[13] In support, Defendants re-raise the arguments raised in their opposition to Plaintiffs' first certification motion before Judge Walls: "'two brand purchasers in the class did not buy any lamotrigine'—that is, they never switched to the lower-priced generic lamotrigine, which is Plaintiffs' theory of brand-purchaser injury—and thus suffered no injury; [and] 'three others did not buy generics directly during Teva's exclusivity period.'" Defs. Opp. at 12 (citing D.E. 406 at 18-19).  Because this issue was decided by Judge Walls[14] and Defendants did not file a motion for reconsideration or raise this issue on appeal thereafter,[15] the Court will not revisit Judge Walls' findings as to this issue.  *See Beazer E., Inc. v. Mead Corp.*, 525 F.3d 255, 263 (3d Cir. 2008)

---

[13] Defendants also argue, in the "ability and motivation to litigate" section, that because eight of the brand purchasers have been acquired by another brand purchaser, for practical purposes, the number of active litigation participants is far fewer than thirty-two.  Defs. Opp. at 11, 18-19.

[14] *See Lamictal I*, No. 12-995, 2018 WL 6567709, at *6 (considering "Defendants' argument that some brand purchasers did not switch to lamotrigine when it launched and thus suffered no injury"); *id.* at *7 (stating that this class is not comprised of indirect purchasers).

[15] *See Lamictal II*, 957 F.3d 184 at 190 ("GSK and Teva challenge only certification as to the members who purchased generic lamotrigine from Teva.").

(quoting *United States v. Husband*, 312 F.3d 247, 250 (7th Cir.2002)) ("[A]ny issue that could have been but was not raised on appeal is waived and thus not remanded.")); *see also United States v. Smith*, 751 F.3d 107, 122 (3d Cir. 2014) (quoting *Skretvedt v. E.I. DuPont De Nemours,* 372 F.3d 193, 203 (3d Cir. 2004)) ("A party may not litigate on remand . . . issues that 'were not raised in [the] party's prior appeal and that were not explicitly or implicitly remanded for further proceedings.'"); *see also United States v. Morris*, 259 F.3d 894, 898 (7th Cir. 2001) ("[P]arties cannot use the accident of remand as an opportunity to reopen waived issues."). Thus, the Court considers whether joinder is impracticable for a class of thirty-two members.

### B.  Impracticability of Joinder

Because the class consists of fewer than forty members, the Court must conduct a "particularly rigorous" inquiry into the impracticability of joinder, with consideration given to the following relevant, but non-exhaustive, factors: "judicial economy, the claimants' ability and motivation to litigate as joined plaintiffs, the financial resources of class members, the geographic dispersion of class members, the ability to identify future claimants, and whether the claims are for injunctive relief or for damages." *In re Modafinil*, 837 F.3d at 253.  The first two factors— judicial economy and the claimant's ability and motivation to litigate as joined plaintiffs—carry the most weight.  *Id.*

### 1.  Judicial Economy

Judicial economy looks to the "administrative burden that multiple or aggregate claims place upon the court" and takes into account "any efficiency considerations . . . including the number of parties and the nature of the action."  *Id.* at 254 (citations omitted).  The analysis must "focus on whether the class action mechanism is substantially more efficient than joinder of all parties."  *Id.*  Thus, the Court considers the "actual, practical difficulties of joining all of the

potential class members." *Id.* (citing *5 Moore's Federal Practice* § 23.22).  For example, the Court may consider whether joinder "would be expensive, time-consuming, and logistically unfeasible," *id.*; however, the Court may not consider "the sunk costs from past discovery and litigation, or the need to conduct further discovery if the class is not certified."  *Id.* at 254-57.  Consideration of sunk costs would improperly "place a thumb on the scale in favor of a numerosity finding for no reason other than the fact that the complex nature of a case resulted in the class certification decision being deferred for years."  *Id.* at 255.

Plaintiffs contend that judicial economy concerns favor class certification because joinder would result in "greatly expanded discovery," including document production and depositions from each joined plaintiff, a multiplication of experts (and thus expert reports, depositions, and expert-related disputes), and a complex trial with "the prospect" of multiple opening and closing statements and each parties' participation at all stages of the trial.  Plfs. Br. at 12-13.  Defendants counter that each claimed efficiency is true of any other case where the class size raises a presumption against class certification, and that Plaintiffs fail to "point to anything special about *this case*," as is required to carry their burden.  Defs. Opp. at 22 (citing *Modafinil*, 837 F.3d at 249) (explaining that the numerosity requirement "calls for an inherently fact-based analysis," requiring the court to "take into account the context of the particular case.").  Defendants add that judicial economy weighs in favor of joinder because "five named Plaintiffs have been jointly conducing this litigation for a decade," including filing joint motions and collectively retaining experts, and because this case is "pervasively characterized by individualized evidence," thus any additional discovery, if necessary, would be targeted towards individualized transactions, whether this case proceeds as a class action or joinder.  Defs. Opp. at 23.

Plaintiffs have not carried their burden as to judicial economy.  As Defendants note, the nature of the matter (two defendants competing on an individualized basis as to each plaintiff), and how it has proceeded to date (including the named Plaintiffs' joint conduct), indicate that joinder is particularly feasible here.  *See* Defs. Opp. at 22-24.  Plaintiffs have failed to counter these arguments, much less articulate that "the class action mechanism is substantially more efficient than joinder of all parties." *In re Modafinil*, 837 F.3d at 254.  Moreover, while the Court is sympathetic to Plaintiffs' discovery-related concerns, "[j]udicial economy does not permit consideration of the sunk costs from past discovery and litigation, or the need to conduct further discovery if the class is not certified," nor does it consider how denial of class certification may further delay the case.  *In re Modafinil*, 837 F.3d at 254-56.  Thus, judicial economy concerns weigh against class certification.

## 2.  Ability and Motivation to Litigate as Joined Plaintiffs

Whether Plaintiffs have the ability and motivation to litigate as joined plaintiffs "primarily involves an examination of the stakes at issue for the individual claims and the complexity of the litigation, which typically will correlate with the costs of pursuing these claims." *In re Modafinil*, 837 F.3d at 257.  Plaintiffs argue that this factor weighs in favor of class certification because "[a] number of the class members lack the incentive and practicable ability to institute *individual suits* because their claims are not large enough to make an *individual suit* practicable, particularly in light of fears of possible retaliation from a major supplier."  Plfs. Br. at 15 (emphases added). According to Plaintiffs, many of the class members have "negative value" claims because "[c]osts in complex antitrust cases of this sort easily reach $3.7 million," and trebled damages here are under $3.7 million for thirteen to sixteen of the thirty-two brand purchasers, and under $1 million

for seven of the thirty-two brand purchasers.[16]  Plfs. Br. at 15-16.  Plaintiffs also direct the Court to *Modafinil*, a case where class certification was denied and approximately two-thirds of the class proceeded, and *AndroGel* and *In re Zetia*, cases where class certification was denied and approximately half of the class proceeded, to "demonstrate[] that joinder of all class members in a case like this is impracticable."[17]

At the outset, as Defendants note, Plaintiffs' arguments as to the costs associated with individual suits are misplaced because the "numerosity rule does not envision the alternative of *individual suits*; it considers only the alternative of joinder"—a substantially less expensive process.  *In re Modafinil*, 837 F.3d at 258 (emphasis added); *see* Defs. Opp. at 21-22; *see also Zangara v. Zager Fuchs, P.C.*, No. 17-6755, 2019 WL 6310056, at *3 (D.N.J. Nov. 25, 2019) ("At this stage, the choice is not between a class action and twenty-six individual suits, but between a class action and joinder of the twenty-six proposed class members," thus the plaintiff's assertions as to individual suits were "misplaced").  Accordingly, Plaintiffs' negative value claims are untenable because even accepting Plaintiffs' contention that the costs here could reach $3.7 million (for which Plaintiffs do not offer adequate support), Plaintiffs improperly assume that if the litigation were to proceed via joinder, each putative class member would spend the entire estimated $3.7 million.  *See King Drug Co. of Florence, Inc. v. Cephalon, Inc.*, 06-1797, 2017 WL 3705715, at *10 (E.D. Pa. Aug. 28, 2017) (discounting the plaintiffs' "ability and motivation to litigate"

---

[16] A negative value claim is a "claim[ ] that could not be brought on an individual basis because the transaction costs of bringing an individual action exceed the potential relief." *In re Modafinil*, 837 F.3d at 257 n.21 (quoting *In re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 179 (3d Cir. 2013)).

[17] Plfs. Br. at 16-18 (citing *In re Modafinil Antitrust Litig.*, 837 F.3d 238 (3d Cir. 2016); *In re AndroGel Antitrust Litig.*, No. 09-2084, 2018 WL 3424612 (N.D. Ga. July 16, 2018)); Plfs. Reply at 12-14 (citing *In re Zetia (Ezetimibe) Antitrust Litig.*, No. 18-2836, 2022 WL 1577219 (E.D. Va. Jan. 25, 2022)).

arguments because they were based on the improper assumption that each putative class member would spend the entire amount estimated for trial); *cf. In re Modafinil*, 837 F.3d at 259 ("While it may be uneconomical for these claims to be pursued in individual litigation, there has been no showing that it would be uneconomical for these [] class members to be individually joined as parties in a traditional lawsuit.").

The Court is also not persuaded that the outcomes in *Modafinil*, *AndroGel*, and *In re Zetia* demonstrate that joinder is impracticable. The question before the Court is not what percentage of class members in purportedly similar cases have litigated through joinder following the denial of class certification.[18] It is whether, in the context of this case, Plaintiffs have the ability and motivation to litigate via joinder. As in *Modafinil*, "[t]his is not the typical class action where hundreds or thousands of claims are aggregated in order to ensure that the wrongdoer is held accountable and that the small claims are vindicated." 837 F.3d at 259. Instead, this matter involves a relatively small group of large and sophisticated corporate plaintiffs, most of whom have claims worth over $1 million, and some of whom may be represented on a contingent basis. *See* Defs. Opp. at 20-22. And "[e]ven if it [is] uneconomical for some . . . individual plaintiffs to join the suit," the Court still has an obligation to consider all other relevant factors to determine whether to grant class status, "which is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *In re Modafinil*, 837 F.3d at 259 (internal citation and quotation marks omitted). Furthermore, the Court does not credit Plaintiffs' purported concern of "possible retaliation" because Plaintiffs have offered no proof to support this contention. *See* Plfs. Br. at 15; *see also In re Modafinil*, 837 F.3d at 257 n.20 (acknowledging that

---

[18] As Defendants note, "Plaintiffs' argument confuses a party's individual appetite for litigation with the practicability of the class members litigating through joinder." Defs. Opp. at 20 n.9.

"fear of retaliation may hinder the ability and motivation of a party," but that "there was no [such] proof of any fear of retaliation"); *see also Ortiz v. Goya Foods, Inc.*, 19-19003, 2022 WL 3053907, at \*5 (D.N.J. Aug. 3, 2022) (affording no weight to the plaintiffs' argument that they "feared retaliation" and thus were not motivated to litigate via joinder because there was no evidence suggesting that such a fear existed). Thus, Plaintiffs have failed to demonstrate that the ability and motivation to litigate as joined plaintiffs weighs in favor of class certification.

### 3. Additional Impracticability Factors

The Court next considers the remaining impracticability factors, including the (1) financial resources of the class members; (2) geographic dispersion of class members; (3) ability to identify future claimants; and (4) whether the claims are for injunctive relief or for damages." *In re Modafinil*, 837 F.3d at 253. First, Plaintiffs offer no argument with respect to the financial resources of the class members, while Defendants argue (albeit in passing) that the class consists of large and sophisticated corporate plaintiffs; thus, this factor leans slightly in favor of joinder. *See* Defs. Opp. at 9. Next, the parties do not appear to dispute that the direct brand purchasers are geographically dispersed across 12 states; thus, the geographic dispersion factor weighs against joinder. *See* Plfs. Br. at 14-15; Plfs. Ex. 1 (D.E. 543-2). Third, the parties are silent as to the ability to identify future claimants, and without more, the Court is not able to consider this factor. However, it appears that all potential claimants have already been identified. Lastly, the parties do not raise arguments as to the relief sought within the context of this factor, but there appears to be no dispute that Plaintiffs seek damages, rather than injunctive relief, which weighs in favor of joinder. *Ortiz*, 2022 WL 3053907, at \*6; *see also King Drug Co. of Florence, Inc.*, 2017 WL 3705715, at \*7 (noting that "[t]his factor weighs in favor of class certification where the claims are for injunctive relief rather than damages" and "weighs against certification" where the

plaintiffs are not seeking injunctive relief). In sum, the first and fourth factors weigh in favor of joinder, the second factor weighs against joinder, and without more, the Court is unable to analyze the third factor.

## IV.    CONCLUSION

Plaintiffs have not proven by a preponderance of the evidence that the class members are so numerous as to render joinder impracticable. Accordingly, Plaintiffs' motion for class certification is **DENIED**. An appropriate Order accompanies this Opinion.

Dated: February 1, 2023

_____
John Michael Vazquez, U.S.D.J.