**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| LOUISIANA WHOLESALE DRUG CO., INC., *et al.*, | Civil Action No. 12-00995 |
| *Plaintiffs/Appellants*, | |
| v. | **OPINION AND ORDER** |
| GLAXOSMITHKLINE LLC, *et al.*, | March 31, 2026 |
| *Defendants/Appellees*. | |

**SEMPER**, District Judge.

The current matter comes before the Court on Plaintiffs-Appellants' appeal of the Honorable Cathy L. Waldor, U.S.M.J.'s ("Magistrate Judge Waldor") July 30, 2025 decision that five new expert reports Defendants submitted were permissible in accordance with the operative scheduling order (ECF 668, "July 30 Order"). (ECF 669.) Defendants opposed the appeal. (ECF 676.) Plaintiffs filed a reply. (ECF 677.) The Court has decided the appeal pursuant to Federal Rule of Civil Procedure 72(a) and Local Civil Rule 72.1(c), and upon the submissions of the parties, without oral argument, pursuant to Federal Rule of Civil Procedure 78. For the reasons stated below, the appeal is **GRANTED**. The July 30 Order is **VACATED**.

## I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This fourteen-year-old dispute arises out of allegations that Defendants GlaxoSmithKline ("GSK") and Teva Pharmaceuticals ("Teva") entered into an illegal reverse-payment agreement to settle patent litigation so that GSK could maintain monopoly-level prices on its brand

lamotrigine tablets known as Lamictal. (*See generally*, ECF 1.) The case was initially filed as a putative class action. (*See id.*)

The parties engaged in, and completed, fact and expert discovery over the course of several years. (ECF 670-1, Declaration of Samuel E. Bonderoff ("Bonderoff Decl.") Ex. 3 at 4.)  Plaintiffs moved for certification of their class in June 2018. (ECF 371.) Class certification was ultimately denied in 2023. (ECF 553; ECF 554.) Subsequently, several absent members of the putative class filed new complaints against Defendants in the District Court for the Eastern District of Pennsylvania. *See e.g.*, *MLI RX LLC v. GlaxoSmithKline LLC* ("*MLI*"), No. 2:23-cv-2960 (D.N.J.). Defendants moved to transfer the new cases to this District under the first-filed rule and 28 U.S.C. § 1404(a). *See id.* at ECF 28. That motion was granted.[1] *See MLI*, No. 2:23-cv-2960, ECF 59; *see also Morris & Dickson*, No. 2:23-cv-00480 (E.D. Pa.), ECF 41.

Following transfer, on October 24, 2023, the parties submitted competing case-schedule and discovery proposals for the four direct purchaser Lamictal actions. *See MLI*, No. 2:23-cv-2960, ECF 85-1. Plaintiffs maintained that no additional fact discovery was necessary. (*Id.* at 3-6.) Plaintiffs also proposed that the only issue on which additional expert reports should be issued was individual damages issues, since the other already-completed expert reports addressed issues common to all plaintiffs. (*Id.* at 6.) Defendants argued that new discovery of the newly added Plaintiffs was necessary. (*Id.* at 7-15.) Defendants proposed a schedule that "[left] appropriate time" for discovery, including "the preparation of any supplemental expert reports[.]" (*Id.* at 14.) As to experts, Defendants further stated,

> With respect to expert discovery, Plaintiffs of course are free to amend or supplement as few expert reports as they wish. Defendants, however, submit that supplementation of certain expert reports on issues other than damages may well be appropriate following

---

[1] The new cases were formally consolidated with the existing case on November 2, 2023. (ECF 577.)

discovery of the Newly Added Plaintiffs. For example, discovery of the Newly Added Plaintiffs will shed light on the nature of competition in the actual and but-for worlds, which in turn may impact the experts' assumptions and conclusions about the relevant market, market power and competition in them.

(*Id.* at 14 n.21.)

On July 31, 2023, Magistrate Judge Waldor held an initial pretrial conference and heard argument from the parties' counsel regarding their competing case schedule and discovery proposals.[2] (*See* Bonderoff Decl. Ex. 5.) After hearing arguments, Magistrate Judge Waldor found that consolidation[3] called for discovery "with respect to the newly named plaintiffs." (*Id.* at 15:7-10.) Plaintiffs expressed concern with the scope of expert discovery in Defendants' proposal, characterizing it as "unlimited." (*Id.* at 16:13-17:5.) In response, Defense counsel argued:

> As to expert discovery, I think it's clear that there are other areas where new discovery could impact what goes into our expert reports, like market definition. Now, I don't think that we are requesting the right just to put in new reports on every single topic. What we're saying is if there's new evidence that we get through this process that impacts things we have previously done, we want to supplement those reports. I mean, that, by definition, is not overbroad. We're just taking what we get in the new discovery -- in the fact discovery and applying it to the new expert discovery.

(*Id.* 19:6-16.) Magistrate Judge Waldor adopted Defendants' proposed schedule, and directed the parties to "proceed with discovery, and I will deal with each problem as it comes – or each objection as it comes – or each deficiency as it comes. But let's see what happens and not make any rules that may be limiting in the future." (*Id.* at 20:23-21:5.)

---

[2] Plaintiffs argued that no additional discovery was necessary following consolidation, and Defendants disagreed, arguing that class certification was denied on the basis of predominance and so there remained individual issues related to whether and what price each purchaser would have gotten from Teva. (*See* Bonderoff Ex. 5 at 10:20-12:9.) Defendants also argued that discovery from the new plaintiffs related to the "nature of competition in this market" was relevant. (*Id.* at 13:3-13.)

[3] The cases were consolidated by an order dated November 2, 2023. (ECF 577.)

On November 2, 2023, the Honorable Brian R. Martinotti, to whom this case was then assigned, held a status conference and directed the parties to submit a new order to Magistrate Judge Waldor "following the spirit of the Judge's order [on July 31, 2023]." (ECF 581 at 4:4-8.) On November 8, 2023, the parties jointly submitted a proposed scheduling order.[4] (ECF 578.) On November 9, 2023, Magistrate Judge Waldor so-ordered the proposed scheduling order. (ECF 580 (the "New Scheduling Order").)

On May 30, 2025, after the conclusion of fact discovery of the newly joined Plaintiffs, Defendants served five new or amended expert reports (the "New Expert Reports"). (Br. at 9-15.) Plaintiffs take issue with these reports.[5] On June 2, 2025, Plaintiffs submitted a letter to the Court expressing their concerns and opposition to the New Expert Reports. (ECF 645.) On June 4, 2025, Defendants filed a letter in response, arguing that the 2023 joinder complaints had changed their case. (ECF 647.) After further correspondence and meet-and-confer attempts (*see* Bonderoff Decl. Exs. 7-8), the Court held a hearing on June 5, 2025 regarding the parties' disagreements (the "June 5 Hearing"). (*Id.* Ex. 9.) At the June 5 Hearing, Plaintiffs argued that Defendants were required to move for leave under Rule 16(b) before serving the expert reports because the new reports relied on old, not new, discovery, and because Defendants replaced experts without explanation. (*Id.* at 11:12-15:10, 20:15-21, 21:9-12.) Defendants argued that Rule 16(b) was inapplicable since the new reports were within the bounds of the November 9, 2023 scheduling order. (*Id.* 22:1-26:15.) Magistrate Judge Waldor directed the parties to meet and confer again and "hone in on" the section

---

[4] The proposed scheduling order included the following events: "Plaintiffs serve expert reports"; "Defendants serve expert reports"; "Plaintiffs serve rebuttal reports"; and "Deadline for depositions of individual damages experts". (ECF 578-1.)

[5] Plaintiffs argue that these reports are "replete with new and revised opinions that [have] nothing to do with any new fact discovery or purportedly 'new allegations,'" and instead were served as an attempt to revise Defendants' prior experts' earlier mistakes and admissions. (Br. at 9-11.)

of the reports that Plaintiffs took issue with. (*Id.* at 42-43.) Instead of briefing, Magistrate Judge Waldor proposed an in-person session to resolve the "real differences" that exist.[6] (*Id.* at 43:13-17.)

On July 30, 2025, Magistrate Judge Waldor held a further hearing regarding the parties' impasse ("July 30 Hearing"). (Bonderoff Decl. Ex. 10.) Magistrate Judge Waldor found that Rule 16(b) did not apply since Defendants' expert reports "were within the scheduling order". (*Id.* at 43:18-21.) Magistrate Judge Waldor noted that Plaintiffs have the opportunity to depose Defendants' experts and produce rebuttal reports. (*Id.* at 44:4-16.) Magistrate Judge Waldor denied Plaintiffs' request for briefing on the issue. (*Id.* at 44:18.) Because she found that the new reports were within the operative scheduling order, Magistrate Judge Waldor refused to engage in Plaintiffs' requested line-by-line inquiry of the New Expert Reports. (*Id.* at 40:10-23, 41:1-7, 43:14-21.) On the same day, Magistrate Judge Waldor issued a text order that the five new expert reports were permissible for the reasons stated on the record. (ECF 668.)

On August 13, 2025, Plaintiffs filed their appeal of Magistrate Judge Waldor's July 30 Order. (ECF 669; ECF 670.) On September 2, 2025, Defendants filed an opposition to the appeal. (ECF 676.) On September 8, 2025, Plaintiffs filed a reply. (ECF 677.)

## II.    LEGAL STANDARD

In a district judge's review of a magistrate judge's decision, Federal Rule of Civil Procedure 72(a) states: "[t]he district judge. . . must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." Similarly, the Local Rules for this district provide that "[a]ny party may appeal from a [m]agistrate [j]udge's

---

[6] Magistrate Judge Waldor noted that she was leaving the bench shortly and wanted to avoid "throwing" the issue to the new Magistrate Judge after she left the bench. (43:17-44:8.) Magistrate Judge Cari Fais is now assigned to the case.

determination of a non-dispositive matter within 14 days" and the district court "shall consider the appeal and/or cross-appeal and set aside any portion of the [m]agistrate [j]udge's order found to be clearly erroneous or contrary to law." Local Civ. R. 72.1(c)(1)(A).

A district judge may reverse a magistrate judge's determination of a non-dispositive issue if it is shown to be "clearly erroneous or contrary to law" on the record before the magistrate judge. 28 U.S.C. § 636(b)(1)(A) ("A judge of the court may reconsider any pretrial matter [properly referred to the magistrate judge] where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law."); Fed. R. Civ. P. 72(a); Local Civ. R. 72.1(c)(1)(A); *Haines v. Liggett Grp., Inc.*, 975 F.2d 81, 93 (3d Cir. 1992) (describing the district court as having a "clearly erroneous review function," permitted only to review the record that was before the magistrate judge). The burden of showing a ruling is clearly erroneous or contrary to law rests with the party filing the appeal. *Marks v. Struble*, 347 F. Supp. 2d 136, 149 (D.N.J. 2004).

A district court "will determine that a finding is clearly erroneous 'when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Dome Petroleum Ltd. v. Emp'rs Mut. Liab. Ins. Co.*, 131 F.R.D. 63, 65 (D.N.J. 1990) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948)). However, "[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *United States v. Waterman*, 755 F.3d 171, 174 (3d Cir. 2014) (quoting *Anderson v. Bessemer City*, 470 U.S. 564, 574 (1985)). The magistrate judge's "ruling is contrary to law if the magistrate judge has misinterpreted or misapplied applicable law." *Kounelis v. Sherrer*, 529 F. Supp. 2d 503, 518 (D.N.J. 2008); *Gunter v. Ridgewood Energy Corp.*, 32 F. Supp. 2d 162, 164 (D.N.J. 1998). A district court, however, will review a magistrate judge's legal conclusions *de novo*. *See Cooper Hosp./Univ. Med. Ctr. v.*

6

*Sullivan*, 183 F.R.D. 119, 127 (D.N.J. 1998) (citations omitted); *see also Haines*, 975 F.2d at 92 (noting that "the phrase 'contrary to law' indicates plenary review as to matters of law"). "Where a Magistrate Judge has exercised discretion, the District Court will reverse the decision only for an abuse of that discretion." *Zaarour v. Murphy*, No. 21-20782, 2025 WL 546581, at *2 (D.N.J. Feb. 19, 2025) (collecting cases).

## III.    <u>DISCUSSION</u>

Plaintiffs argue that (a) permitting expert substitutions without a showing of good cause is contrary to law (Br. at 21-25); (b) permitting expert substitutions despite failing to consider the *Pennypack* factors is contrary to law[7] (*id.* at 25-29); and (c) Magistrate Judge Waldor's decision not to allow briefing on the expert-discovery disputes was an abuse of discretion (*id.* at 29-30). In response, Defendants argue that Rule 16(b)(4)'s "good cause" standard does not apply because they complied with the deadlines in the New Scheduling Order. (Opp. at 12-16.) Defendants further argue that Magistrate Judge Waldor did not err in failing to consider the *Pennypack* factors because *Pennypack* does not apply to timely disclosures. (*Id.* at 16-18.) Finally, Defendants argue that Magistrate Judge Waldor did not err in refusing to allow briefing on the expert issues because she heard argument at the July 30 Hearing. (*Id.* at 18-21.) The burden to show that Magistrate Judge Waldor's July 30 Order is clearly erroneous or contrary to law rests with Plaintiffs. *Marks*, 347 F. Supp. 2d at 149.

---

[7] The *Pennypack* factors are five factors set forth by the Third Circuit in *Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894 (3d Cir. 1977) that are applicable when the timeliness of an expert opinion is challenged. The five factors are: (1) the prejudice or surprise in fact of the party against whom the evidence would have been presented, (2) the ability of that party to cure the prejudice, (3) the extent to which the presentation of the evidence would disrupt the orderly and efficient trial of the case or other cases in the court, (4) bad faith or willfulness in failing to comply with the court's order, and (5) the importance of the excluded evidence. *LabMD Inc. v. Boback*, 47 F.4th 164, 189 (3d Cir. 2022) (citing *Konstantopolous v. Westvaco Corp.*, 112 F.3d 710, 719 (3d Cir. 1997)).

This is a rare case in which the Plaintiffs-Appellants have carried their burden and shown that the Magistrate Judge's decision was clearly erroneous.

### A. Scope of the New Scheduling Order

Before addressing the parties' arguments, the Court first must determine the scope of the New Scheduling Order.

The Court agrees with Plaintiffs that the New Scheduling Order covers supplemental expert discovery related to the new discovery and allegations implicated by the new Plaintiffs. (*See* Br. at 10.) Defendants' primary argument that Magistrate Judge Waldor "issued (and this Court approved) a *new scheduling order* setting a *new deadline* for the submission of *new expert reports* without limitations" (Opp. at 1 (emphasis in original)) is disingenuous. While Magistrate Judge Waldor did not agree with Plaintiffs' proposal to limit expert discovery to the new individual Plaintiffs' damages (*see* Bonderoff Ex. 5), the record shows that the New Scheduling Order contemplated only the supplementation of existing expert reports based on new allegations and new discovery related to the new Plaintiffs.

At the July 31, 2023 conference, Magistrate Judge Waldor agreed with Defendants that Judge Vazquez's opinion on class certification "call[ed] for discovery **with respect to the newly named plaintiffs**…I will adopt the schedule submitted by [the] defense." (Bonderoff Ex. 5 at 15:7-10 (emphasis added).) Magistrate Judge Waldor rejected Plaintiffs' position that new discovery, including expert discovery, should be limited solely to damages. (*See id.*) Magistrate Judge Waldor's statement at the July 31, 2023 conference that she would "not make any rules that may be limiting in the future" was responsive to Plaintiffs' counsel's arguments in favor of (1) limiting expert discovery to damages and (2) limiting the length of Plaintiffs' depositions. (*Id.* at 15:25-18:13.) Magistrate Judge Waldor did not, as Defendants now suggest, hold that expert discovery

was "without limitations." (Opp at 1.) Nor is it accurate to state, as Defendants do, that Magistrate Judge Waldor entered a scheduling order "that set deadlines for the parties to submit 'expert reports,' unlimited by topic or in number[.]" (*Id.* at 13.)

In fact, Magistrate Judge Waldor's July 31, 2023 order adopting Defendants' proposed scheduling order aligned with Defendants' statements on expert discovery in their July 26, 2023 case-schedule and discovery proposal. *See MLI*, No. 2:23-cv-2960, ECF 67. In that proposal, Defendants stated that "***supplementation*** of certain expert reports on issues other than damages may well be appropriate following discovery of the Newly Added Plaintiffs." (*Id.* at 14 n.21 (emphasis added).) And at the July 31, 2023 conference, Defendants' counsel stated, "I don't think that we are requesting the right just to put in new reports on every single topic." (Bonderoff Ex. 5 at 19:9-10.) Defendants' counsel continued, "[w]hat we're saying is if there's new evidence that we get through this process that impacts things we have previously done, we want to supplement those reports…We're just taking what we get in the new discovery -- in the fact discovery and applying it to the new expert discovery." (*Id.* at 19:11-16.)

The record from the June 5 Hearing further reflects an understanding that the New Scheduling Order covered supplemental expert reports based on new discovery and allegations. At the June 5 Hearing, Magistrate Judge Waldor scheduled a follow-up hearing in July on the expert issues, stating, "I want to deal with the realities of what's going on with these reports and *whether or not they actually address or are attached to new allegations and new plaintiffs*[.]" (Bonderoff Ex. 9 at 44:24-45:3 (emphasis added).) She directed the parties to meet and confer and scheduled the July 30 Hearing to have an "in-person with many hours in court to try and go through this and resolve the issues and the real differences that exist." (*Id.* at 43:13-17.)

Defendants further argue that "Magistrate Judge Waldor's factual determination concerning the scope of her own order is dispositive of Plaintiff's challenge, and Plaintiffs do not (and cannot) offer any basis for this Court to disturb that conclusion as clearly erroneous." (Opp. at 15-16.) But Magistrate Judge Waldor demonstrated a consistent understanding of the New Scheduling Order. At the July 30 Hearing, she stated, "[s]o what I need time to do, and I'm going to do, to tell you the truth, is decide that [the New Expert Reports] were within the scheduling order. *They are new allegations*." (Bonderoff Ex. 10 at 43:19-21 (emphasis added).)

Finally, the New Scheduling Order does not explicitly place limitations on expert reports. (*See* ECF 580.) But by including a deadline only for depositions of individual damages experts, and no other depositions, the New Scheduling Order reflects the parties' understanding that new expert discovery would not be completely redone. (*See id.*)

### B. Magistrate Judge Waldor's July 30, 2025 Order

At the July 30 Hearing, Magistrate Judge Waldor heard argument and decided that the New Expert Reports were within the New Scheduling Order. (Bonderoff Decl. Ex. 10 at 43:19-23.) However, Magistrate Judge Waldor declined to "go through [the] reports" to determine whether the "new allegations revealed certain evidence or certain disclosure [sic] that necessitated supplementation[.]" (*Id.* at 43:3-18; *see also id.* 40:10-15.) Magistrate Judge Waldor's decision focused on allowing "full[] and fair[] discovery," and she noted that the case had no trial date or summary judgment schedule set, and so Plaintiffs had an opportunity to submit rebuttal reports and depose the new experts. (*Id.* at 41-44.) Magistrate Judge Waldor then issued a text order that the five new expert reports were permissible. (ECF 668.)

The Court is understanding of Magistrate Judge Waldor's concern that the parties interpret the reports entirely differently, making a comparison difficult. (Bonderoff Ex. 10 at 43:14-18.)

However, Magistrate Judge Waldor also acknowledged at the June 5 Hearing that such a comparison would be necessary if the parties could not resolve their differences. (Bonderoff Ex. 9 at 42:23-45:5.) The New Scheduling Order did not cover a wholesale do-over of expert discovery. (*See supra* Section III.A.) Instead, it contemplated the supplementation of existing expert reports. (*Id.*) In response to Plaintiffs' arguments, Magistrate Judge Waldor could not have made the decision that the New Expert Reports were within the New Scheduling Order without an understanding of the content of the New Expert Reports, yet she declined to compare the reports. (Bonderoff Ex. 10 at 40:10-15, 43:3-18.) Moreover, Magistrate Judge Waldor's decision emphasized that Plaintiffs had an opportunity to depose the new experts and submit rebuttal reports. (43:14-44:16.) Yet these considerations relate to Plaintiffs' Rule 16 and *Pennypack* arguments, not the threshold question of whether Rule 16 and *Pennypack* are applicable. Because the New Scheduling Order is not unlimited in scope, this Court is "left with the definite and firm conviction that a mistake has been committed." *Dome Petroleum Ltd. v. Employers Mut. Liab. Ins. Co.*, 131 F.R.D. 63, 65 (D.N.J.1990) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)).

The Court disagrees with Plaintiffs, however, that Magistrate Judge Waldor erred by not engaging in a Rule 16 or *Pennypack* analysis. (*See* Br. at 25-29.) Magistrate Judge Waldor erred by declining to compare the content of the New Expert Reports to determine whether they were within the New Scheduling Order. Indeed, Magistrate Judge Fais may determine that the New Expert Reports are within the New Scheduling Order and Rule 16 and/or *Pennypack* are inapplicable.

This decision should not be read as a conclusion that the new supplemental expert reports may only cite to new discovery or may not modify prior expert opinions, or that the New Expert

Reports are entirely impermissible. As Defendants point out, the new complaints include new or revised allegations and consolidation changed the case from a putative class action to a joinder action. (*See* Opp. at 5 n.3.) Whether the new or amended expert reports comport with the New Scheduling Order is a matter within the Magistrate Judge's discretion after she reviews the reports.

## IV.    CONCLUSION

For the reasons stated above, Plaintiffs' appeal is **GRANTED**. The July 30 Order is **VACATED** and the matter is remanded to Magistrate Judge Fais for further proceedings consistent with this Opinion.

Accordingly, **IT IS** on this 31st day of March 2026,

**ORDERED** that Plaintiffs' appeal of the July 30, 2025 order at ECF 668 (ECF 669; ECF 670) is **GRANTED**; and it is further

**ORDERED** that the July 30, 2025 order at ECF 668 is **VACATED**.

*/s/ Jamel K. Semper*
**HON. JAMEL K. SEMPER**
**United States District Judge**

Orig:  Clerk
cc:    Cari Fais, U.S.M.J.
       Parties

12